1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LARRY E. KLAYMAN, Esq.**
Washington, D.C. Bar No. 334581
2020 Pennsylvania Ave N.W., Suite 800
Washington, D.C. 20006
(310) 595-0800
leklayman@gmail.com
*Attorney for Petitioner*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

In Re:  DENNIS L. MONTGOMERY

                              Petitioner,


          v.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
401 West Washington Street
          Suite 130, SPC 1
Phoenix, Arizona  85003-2118



                              Respondent.

Case No.

_____

## <u>PETITION FOR WRIT OF MANDAMUS FOR ADMISSION OF</u>
## <u>PETITIONER'S ATTORNEY PRO HAC VICE</u>

                    Larry Klayman, Esq.
                    FREEDOM WATCH, INC.
                    2020 Pennsylvania Ave.  NW, Suite 345
                    Washington, DC 20006
                    Tel: (310) 595-0800
                    Email: leklayman@gmail.com

Attorney for Petitioner Dennis L.  Montgomery

i

# **TABLE OF CONTENTS**

I.  Direction By Appeals Panel For Assignment to
    the Same Panel for This Petition                                    1
II.  Incorporation Of Excerpt Of Record by Reference                   1
III.  Introduction                                                     2
IV.  Jurisdictional Statement                                          4
V.  Relief Sought                                                      5
VI.  Statement Of Facts Necessary To Understand The
     Issues Presented By The Petition                                  6
    A. Change Of Circumstances At Present Time                         6
    B. Summary Of The Dispute And Circumstances                       7
    C. Case Has Been Dramatically Transformed Into New Matters         8
    D. Risk Of Criminal Investigation Or Prosecution
       Requires Counsel                                                9
    E. Plaintiffs Below Incite Criminal Prosecution Of Petitioner     11
    F. Petitioner Faces Limited Options Without
       *Pro Hac Vice* Counsel                                         12
    G. Petitioner's Motion To Intervene In The Case Below             12
VII.  Argument                                                        14
    A. Mandamus Is Appropriate Remedy:  "Bauman"
       Standards Are Satisfied                                        14
    B. Mandamus Is Appropriate Remedy For
       *Pro Hac Vice* Admission                                      18
    C. Petitioner Has Right To Counsel, Even
       *Pro Hac Vice* As Of Right                                    19
    D. District Court Erred Denying Admission Of Montgomery's
       Attorney *Pro Hac Vice* On Speculation Of Conflict Of Interest  22
    E. District Court Must Analyze *Pro Hac Vice* Application --
       Not Apply Rule "Mechanistically"                              26
    F. This Ninth Circuit Has Conceded That Pro Hac Vice
       Standards In This Circuit Need To  Clarified                  27
    G. Petitioner's Intervention As Of Right Or By Permissive
       Intervention Should Be Ordered                                29
VIII.  Conclusion And Request For Relief                              34

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bauman v. U.S. District Court*, 557 F.2d 650 (9th Cir. 1977).................................. 14

*Birt v. Montgomery*, 725 F.2d 587, 592 (11th Cir.) ............................................... 22

*Christensen v. United States Dist. Court*, 844 F.2d 694, 696-99 (9th Cir. 1988)..................... 15

*D.H. Overmeyer Co., Inc. v. Robson*, 750 F.2d 31, 34 (6th Cir. 1984) ..................................... 28

*Dunton v. County of Suffolk* ........................................................................ 24

*Dunton v. County of Suffolk*, 729 F.2d 903, 909 (2d Cir.1984), *amended* 748 F.2d 69
   (2d Cir.1984)......................................................................................... 23

*Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322, 1325 (9th Cir.),
   *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976).................................... 23

*In re Cement Antitrust Litig.*, 688 F.2d 1297, 1301 (9th Cir. 1982)......................... 14

*In re Evans*, 524 F.2d at 1007 ...................................................................... 28

*Medhekar v. United States Dist. Court*, 99 F.3d 325, 327 (9th Cir. 1996) ........................... 16

*Panzardi-Alvarez v. United States*, 879 F.2d 975, 980 (1st Cir.1989) ............................. 21

*Sanders v. Russell*, 401 F.2d 241, 247-48 (5th Cir. 1968)...................................... 28

*Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997) ............................. 28

*Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir. 1957) ................................................. 28

*Trone v. Smith*, 621 F.2d 994 (C.A.9 (Cal.), 1980) ................................................. 23

*Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85 (C.A.9 (Mont.), 1983) ............. 24

*U.S. v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir.1982) ......................................... 22

*U.S. v. Nichols*, 841 F.2d 1485, 1502 (10th Cir.1988)............................................... 21

*United States v. Garrett*, 179 F.3d 1143 (9th Cir.1999) ............................................ 20

*United States v. Gonzalez-Lopez*, 399 F.3d 924, 932 (8th Cir. Mo. 2005)........................... 22

*United States v. Lillie*, 989 F.2d 1054, 1056 (9th Cir.1993) ......................................... 20

*United States v. U.S. Dist. Court for the Dist. of Nevada* ........................ 15, 18, 19, 29

*United States v. Walters,* 309 F.3d 589, 592 (9th Cir. Cal. 2002), ................................... 26

*Wheat v. United States*, 486 U.S. 153, 159, 100 L. Ed. 2d 140, 108 S. Ct. 1692 (1988); ........ 19

*Wilson v. Mintzes*, 761 F.2d 275, 278-79 (6th Cir. 1985)........................................... 22

**Statutes**

28 U.S.C. § 1292(b) ................................................................................. 15

28 U.S.C. § 1651 ................................................................................. 2, 4, 5

Sixth Amendment ....................................................................................... 2

**Rules**

21-2 ............................................................................................... 2, 5

21-3 ............................................................................................... 2, 5

21-4 ............................................................................................... 2, 5

Federal Rules of Appellate Procedure ("FRAP") Rule 21................................. 2, 5

FRAP Rule 28-2.5................................................................................... 16

Local Circuit Rules 21-1 ......................................................................... 2, 5

## I. DIRECTION BY APPEALS PANEL FOR ASSIGNMENT TO THE SAME PANEL FOR THIS PETITION

A panel  (the "Appeals Panel") of the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") held oral argument on Wednesday, September 14, 2016, at 09:30 A.M. in Courtroom 3 in San Francisco, California, while previously hearing this matter as an appeal.  The transcript of this hearing is being ordered and will be filed as a supplemental exhibit.  The Appeals Panel dismissed the appeal on the grounds of the Ninth Circuit's lack of jurisdiction to hear the case as an appeal. However, the Appeals Panel issued the following directions on page 5 of its decision:

> 5. We note that the dismissal of this consolidated appeal is without prejudice to the possibility that Montgomery may file a petition for a writ of mandamus in this Court seeking similar relief. *In the event that such a petition for a writ of mandamus is filed, the petition shall be assigned to this panel, which retains jurisdiction over it. See Ninth Circuit General Order 3.6(d).*

*See* September 27, 2016, Memorandum ("Memorandum Opinion"), Consolidated Appeal Numbers 15-16440 and 15-16626, page 5 (emphasis added).  Exhibit A, attached.

## II. INCORPORATION OF EXCERPT OF RECORD BY REFERENCE

In addition to the exhibits attached to this Petition, the Petitioner respectfully requests in the interest of judicial economy and recourses that the Excerpt of the Record from the Petitioner's previous appeal in *Melendres v. Arpaio,* Consolidated Appeals Nos.  15-16440 and 15-16626 in the Ninth Circuit be considered and

incorporated by reference.

## III.   INTRODUCTION

This U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") is now asked to protect and implement the right to counsel under the Sixth Amendment and right to intervene under the Fifth Amendment due process provision under the U.S. Constitution.  The Petitioner is being denied his right to the effective assistance of the counsel of his choice.  Mandamus is required to prevent that violation of the Defendant's constitutional rights.

The U.S. District Court for the District of Arizona ("District Court") made non-party Petitioner Dennis L. Montgomery ("Petitioner" or "Montgomery" below) a centerpiece of the case below brought by the Plaintiffs in *Melendres, et. al. v. Arpaio, et. al.* (CV-07-2513-PHX-GMS).  The District Court was hearing post-judgment contempt proceedings brought by the Plaintiffs below against Maricopa County Sheriff Joe Arpaio and MCSO.

Pursuant to 28 U.S.C. § 1651,  Federal Rules of Appellate Procedure ("FRAP") Rule 21, and Local Circuit Rules 21-1, 21-2, 21-3, and 21-4, the Petitioner respectfully petitions for a writ of mandamus to compel the Respondent, the District Court, by the Honorable G. Murray Snow, to enter the admission *pro hac* vice of the Petitioner's attorneys, Larry Klayman, Esq. and Jonathon Moseley, Esq., and to order that Montgomery's motion to intervene be granted.

The Petitioner was named in a criminal referral to the U.S. Attorney for the District of Arizona "Order Re Criminal Contempt" in the District Court on August 19, 2016. See Exhibit B, attached. Although not explicitly recommended for prosecution by Judge Snow as a criminal target, Montgomery was alleged in the criminal referral -- in an official filing with federal prosecutors -- to have been involved in alleged criminal activity with Maricopa County, Arizona, Sheriff Joe Arpaio ("Sheriff Arpaio") and the Maricopa County Sheriff's Office ("MCSO").

As a result, the legal jeopardy to the Petitioner of possible criminal investigation and even prosecution cannot be ignored, when a federal judge formally spells out to the U.S. Attorney allegations of involvement in criminal conduct -- even though unfounded, inappropriate, and based upon profound misinterpretation, confusion, and misunderstanding of the Petitioner's actions. The Petitioner requires legal representation of his informed selection to defend his legal rights and guide him and protect him in the possibility of criminal investigation and prosecution under Judge Snow's criminal referral.

Among other issues, Montgomery's personal property and intellectual property were also seized by the District Court unexpectedly and without warning, notice or due process. Montgomery's property had been temporarily loaned to MCSO under a contract preserving Montgomery's ownership of the property rights and intellectual property rights for the purpose of MCSO investigating and pursuing Montgomery's

1    whisteblower complaint.  It is not the property of MCSO.

2        The District Court then denied the application for admission *pro hac vice* of

3    not one but <u>*two*</u> attorneys to represent Montgomery in the District Court, first

4    Jonathon Moseley and then Larry Klayman.  The Petitioner sought to intervene in the

5

6    District Court but his attorneys were prevented from appearing in the District Court.

7        The Petitioner appealed to the Ninth Circuit.  The panel of the Ninth Circuit

8

9    "Appeals Panel" found that the orders appealed from were not appealable and

10   therefore the Ninth Circuit lacked jurisdiction to hear the appeal.

11       Unwrapping the details, this matter appears to turn on a pure question of law.

12

13   Where the Ninth Circuit has commented that its precedents have not been as specific

14   as they could be, the District Court applied an inaccurate legal standard.  It is

15   appropriate for this Court to clarify for the Circuit the standard for alleged conflicts of

16

17   interest in the context of *pro hac vice* attorney admission applications.  The law

18   requires a showing of an actual conflict of interest far more specific and compelling

19

20   than a court merely reciting that an attorney represents two clients at the same time

21   on entirely <u>*unrelated*</u> matters.

22

23

24   **IV.    JURISDICTIONAL STATEMENT**

25       This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1651.

26   "The Supreme Court and all courts established by Act of Congress may issue all writs

27

28

necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This Petition is brought pursuant to 28 U.S.C. § 1651, FRAP Rule 21, and Local Circuit Rules 21-1, 21-2, 21-3, and 21-4

Venue is proper in the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") as the subject District Court is within the Ninth Circuit of the federal judicial system.

## V. RELIEF SOUGHT

Petitioner seeks a writ of mandamus compelling the Honorable G. Murray Snow of the District Court to admit the Petitioner / Putative Intervenor's chosen attorneys *pro hac* vice in the case of *Melendres, et. al. v. Arpaio, et. al.* in. and to intervene on behalf of Petitioner.

The Ninth Circuit should order that at least one of these two attorney applications or both should be accepted. The denial of not one but two different attorneys underscores a misunderstanding of the applicable law in the trial court below.

Petitioner also seeks relief by mandamus to order his intervention in the case below to protect his legal rights and property interests, as set forth in detail below.

Petitioner seeks to have any orders or actions by Judge Snow, including orders for production of documents, relating to Petitioner Montgomery be vacated and his documents, information, and intellectual property returned to him.

**VI. STATEMENT OF FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED BY THE PETITION**

**A. Change of Circumstances At Present Time**

Initially, the District Court denied the applications for admission *pro hac vice* exclusively -- after stripping away the branches to find the trunk -- on the proposition that Klayman and Moseley represented Sheriff Arpaio in an entirely unrelated lawsuit in the U.S. District Court for the District of Columbia challenging the constitutionality of President Barack Obama's changing the law on immigration without a Congressional vote by executive fiat. That case was already in the U.S. Court of Appeals for the District of Columbia, Appeal No. 14-5325 , at the time the *pro hac vice* applications were denied in the District Court below here. Merely reciting that case, without showing any actual conflict of interest, was the reason for the denial.

However, that case is now concluded. While Montgomery's appeal was pending here, the appeal of Klayman's and Moseley's lawsuit on behalf of Sheriff Arpaio was decided, a petition for writ of certiorari was considered and denied in the U.S. Supreme Court, Case No. 15-643 there on January 19, 2016, and a motion for reconsideration filed January 21, 2016, there was denied on February 26, 2016.

Therefore the core lynchpin reason that Klayman and Moseley were denied *pro hac vice* admission <u>no longer exists</u>. Klayman and Moseley are no longer

representing Sheriff Arpaio in that other case, because it was concluded on February 26, 2016, with final appeals to the U.S. Supreme Court.

In the context of an appeal, the analysis of this change could be different, here on this petition for writ of mandamus the current circumstances call for the petition to be granted now and mandamus to issue.

### B. Summary of the Dispute and Circumstances

It is perhaps most economical and persuasive to quote the Appeals Panel of the Ninth Circuit in summarizing the circumstances so that attention can be focused on key, operative issues. The Appeal Panel stated on September 27, 2016:

> Dennis Montgomery seeks to appeal the denial of two applications for admission *pro hac vice* submitted by attorneys Jonathon Moseley and Larry Klayman, the striking of his motions to intervene and disqualify the district court judge, and the denial of a motion to disqualify the judge filed by other litigants in this case. We conclude that we do not have jurisdiction to review the orders from which Montgomery appeals, and we dismiss this consolidated appeal.

> 1. In May 2015, attorney Jonathon Moseley filed an application in the district court seeking permission to appear in this case *pro hac vice* on behalf of putative-intervenor Dennis Montgomery. Moseley also filed, on behalf of Montgomery, a motion to intervene and a motion to disqualify the district court judge. The district court denied Moseley's application to appear *pro hac vice* and then struck the pending intervention and disqualification motions under Fed. R. Civ. P. 12(f) and D. Ariz. LRCiv 7.2(m)(1). Montgomery filed a motion to reconsider the denial of Moseley's application, which the district court denied. Montgomery appeals these orders. Montgomery also appeals the district court's order denying a motion to disqualify the judge filed on behalf of defendant Joseph Arpaio and non-party contemnor Gerard Sheridan by their respective counsel.

In July 2015, Larry Klayman filed an application in the district court seeking permission to appear *pro hac vice* on behalf of Montgomery. The district court denied Klayman's application. Montgomery filed an appeal of that order, which we consolidated with his appeal of the orders relating to the application and motions submitted by Moseley and the motion to disqualify filed on behalf of Arpaio and Sheridan by their respective counsel.

*See* September 27, 2016, Memorandum Opinion, Consolidated Appeal Numbers 15-16440 and 15-16626, page 2-3. Exhibit A, attached.

## C. Case Has been Dramatically Transformed Into New Matters

To understand these matters, one must recognize that the case of *Melendres, et. al. v. Arpaio, et. al.* has taken several dramatic turns and that now current developments bear no relationship to the original litigation. The original case from which these matters arise ended with a final order on October 2, 2013. On that date, Judge Snow entered a "Supplemental Permanent Injunction / Judgment Order." Sheriff Joe Arpaio and the Maricopa County Sheriff's Office filed a Notice of Appeal from the October 2, 2013, final order to the U.S. Court of Appeals for the Ninth Circuit, which appeal was heard as a final order.

Now 36 months after the final order, post-judgment proceedings are focused on allegations that the Court's permanent injunction was not complied with. The Plaintiffs in the case below brought show cause proceedings alleging that the Defendants in the case below were in contempt of the District Court's permanent injunction. None of these parties or proceedings involved Montgomery in any way.

But then, on April 23, 2015, Judge Snow launched an entirely new, different, and irrelevant inquiry concerning Dennis L. Montgomery during the testimony of Sheriff Joe Arpaio. The case fundamentally changed once more on April 23, 2015.

Plaintiffs brought contempt proceedings to enforce the Permanent Injunction. A review of the reports of Monitors appointed by the District Court illustrate how the case has expanded since October 2, 2013, to track dozens of purely management issues. However, on or about April 21-24, 2015, the case entered a new phase focusing largely on Petitioner Dennis Montgomery for the first time.

Montgomery became involved with MCSO for innocent reasons, not as a target of any MCSO investigation. Montgomery was and is a complaining witness and confidential informant, working with MCSO as a whistleblower. The Petitioner wanted MCSO to investigate and act upon wrongs committed by others. Petitioner Montgomery is a whistleblower who worked for a consulting contractor for the National Security Agency ("NSA") and Central Intelligence Agency ("CIA").

**D. Risk of Criminal Investigation or Prosecution Requires Counsel**

The "Order Re Criminal Contempt" was entered by Judge Snow in the District Court during the pendency of this appeal on August 19, 2016. Document # 1792.

Judge Snow refers to Dennis Montgomery's intellectual and personal property and allegations of Montgomery's supposed involvement in potentially criminal activity with Sheriff Joe Arpaio on pages 1, 2, 5, 6, 10, 11, 12, 13, 14, 15, and 16.

Judge Snow's August 19, 2016 order falsely accuses the Appellant of involvement in criminal activity, based only on rumor and innuendo and the failure to carefully understand and interpret the evidence in the record, as in many orders and pleadings in the case, often to a much-greater extent.

Judge Snow wrote in the Order:

> Specifically, at the time the Court issued the above order, the Sheriff knew that Montgomery had given the MCSO 50 hard drives that Montgomery claimed to be the master database of records that he had supposedly purloined from the CIA. (Doc. 1677 ¶ 353; Doc. 1455 at Tr. 2064; Doc. 1457 at Tr. 2331–32; Doc. 1458 at Tr. 2561–63.) To reveal those hard drives would have revealed that they did not contain the materials that Montgomery had described. It also may have called into question some of Sheriff Arpaio's other ongoing investigative activities in which he had partnered with Montgomery, such as the alleged illegitimacy of President Barack Obama's birth certificate. (*See* Doc. 1677 ¶¶ 360–63.) It would also reveal that the MCSO actually took possession of, and intended to use, material that it believed to have been stolen from the CIA.

As cited below, the U.S. District Court for the District of Nevada has already ruled that Montgomery's property was his in the Nevada Orders, and not stolen from anybody much less stolen from the CIA.  The District Court and all parties know that it is completely false that "MCSO actually took possession of, and intended to use, material that it believed to have been stolen from the CIA."

Nevertheless, for a sitting federal judge to issue a formal criminal referral to the U.S. Attorney raising the specter of the Petitioner *stealing materials from the CIA*

undeniably places the Petitioner in genuine legal jeopardy and in need of criminal

defense attorneys to advise him and defend his legal rights.

Judge Snow leveled several accusations that Montgomery had committed or

participated in several crimes.  Needless to say, though beyond the scope here, the

Appellant soundly rejects those accusations.  Yet, placing such allegations in front of

federal prosecutors by a federal judge creates a significant risk of legal jeopardy.

**E. Plaintiffs Below Incite Criminal Prosecution of Petitioner**

Similarly, the Plaintiffs in the case below stated in pleadings:

> Even more troubling, as the Court noted in a post-hearing
> status conference, the evidence indicates that Dennis
> Montgomery informed MCSO personnel—with Chief
> Deputy Sheridan's knowledge—that he was using a
> database of information "harvested by the CIA and
> confiscated by him" in his investigation, and also purported
> to be tracking telephone calls between the Court, the
> Attorney General, the Assistant Attorney General, and the
> U.S. Attorney for the District of Arizona. Tr. of May 14,
> 2015 at 44:22-45:2, 45:10-16; Wang Decl., Ex. C, F. ***This
> implicates possible violations of federal criminal laws by
> MCSO personnel in the course of the MCSO-Montgomery
> investigation. See, e.g., 18 U.S.C. §§ 793(b)-(f) (taking or
> communication of documents relating to national
> defense); 798 (disclosure of classified information); 1503
> (intimidation of federal court and obstruction of justice);
> 1509 (obstruction of court orders); 1924 (unauthorized
> removal of classified information); 2511 (intercepting
> electronic communications); 2701 (unlawful access to
> stored communications).***

Plaintiffs' "Response in Opposition to Sheriff Arpaio and Chief Deputy Sheridan's
Motion for Recusal or Disqualification of the Court," filed in the District Court June

12, 2015, Document # 1150, footnote 2 on page 9, attached as Exhibit C.  (Emphasis added.)

Thus, again, the allegations of the Plaintiffs below clearly accuse the Appellant Dennis Montgomery of committing crimes and/or being a part of criminal activities or conspiracies.  The risk of legal jeopardy that any person in like circumstance may have to defend against such allegations cannot be ignored.  The Plaintiffs have in this and many pleadings sought to encourage criminal prosecution of Montgomery and others.

## F.  Petitioner Faces Limited Options Without *Pro Hac Vice* Counsel

The Supplemental Declaration of Appellant Dennis L. Montgomery, attached as Exhibit D, makes clear that the Appellant would not be able practically or financially to hire an attorney in Arizona rather than engaging Larry Klayman *pro hac vice*.  Another attorney would not have the familiarity with the Petitioner's legal concerns both in this case and affected elsewhere by any positions or actions taken here that Larry Klayman has.  And, Petitioner is too ill to represent himself pro se.  Thus, the Petitioner could not obtain equivalent legal representation other than by the granting of the application of Larry Klayman and/or Jon Moseley to appear *pro hac vice*.

## G. Petitioner's Motion to Intervene in the Case Below

The Petitioner also seeks mandamus that his request to intervene be granted. The Petitioner has a personal stake in this matter to bring this Petition now, including

because his intellectual property, records, documents, and work have been seized by

order of Judge Snow. Petitioner provided his work and intellectual property to the

MCSO under contract that preserved his ownership of the proprietary information,

trade secrets, data, and work belonging to him. By order in open court on April 23

and April 24, 2015, and by a sealed order on April 27, 2015, Document # 1033 in

ECF. Petitioner's intangible personal property has been taken and his constitutional

rights, including the work product privilege with his attorney have been trampled.

The ownership of the Petitioner's intellectual property has already been

litigated -- without any assertion of error in any appeal. The U.S. District Court for

the District of Nevada has already ruled that (1) the data and intellectual property

belongs to Dennis Montgomery, (2) the U.S. Government was required to return all

of the data and information to Dennis Montgomery, and (3) the U.S. Government

deceived the Court in falsely claiming that the data, information, and/or intellectual

property did not belong to Dennis Montgomery. These Orders are *res judicata* and

are now final. In addition, Petitioner needs to intervene to protect himself against a

possible criminal proceeding, as set forth herein.

*See Dennis Montgomery and the Montgomery Family Trust v. eTreppid Technologies, LLC, Warren Trepp and the U.S. Department of Defense*, U.S. District Court for the District of Nevada, Case Nos. 3:06-CV-00056-PMP-VPC and 3:06-CV-00145-PMP-VPC, Order, Judge Philip M. Pro, March 19,2007, and *In the Mater of the Search of: The Residence Located at 12720 Buckthorne Lane, Reno, Nevada, and Storage Units 136, 140, 141, 142 and 143, Double R Storage, 888 Madestro Drive, Reno, Nevada,* U.S. District Court for the District of Nevada, Case Nos. 3:06-

CV-0263-PMP-VPC and 3:06-MJ-00023-VPC, Order, Magistrate Judge Valerie P. Cooke, November 28, 2006. ("Nevada Orders.")

## VII.   ARGUMENT

A. **Mandamus is Appropriate Remedy:  "Bauman" Standards are Satisfied**

This Court weighs whether a writ of mandamus is warranted by weighing five factors enumerated in *Bauman v. U.S. District Court*, 557 F.2d 650 (9th Cir. 1977), as the Court continued to explain in the same case:

> To determine whether mandamus relief is appropriate, we weigh five factors enumerated in *Bauman v. U.S. District Court*,  557 F.2d 650, 654-55 (9th Cir. 1977):
>
> > (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

Id. (citations omitted).

> The Bauman factors are not exhaustive, see *In re Cement Antitrust Litig.*,  688 F.2d 1297, 1301 (9th Cir. 1982) (listing additional considerations), and "should not be mechanically applied," *Cole v. U.S. Dist. Court*, 366 F.3d 813, 817 (9th Cir. 2004). While all the factors need not be present to issue the writ, id., "the absence of factor three-clear error as a matter of law-will always defeat a petition for mandamus . . . ." *DeGeorge v. U.S. Dist. Court*, 219 F.3d 930, 934 (9th Cir. 2000) (internal quotation marks

omitted).

*United States v. U.S. Dist. Court for the Dist. of Arizona* at page 16; *Credit Suisse v. United States Dist. Court*, 130 F.3d 1342, 1345 (9th Cir. 1997).

Guidelines for issuing a writ are more flexible when the court of appeals exercises its supervisory mandamus authority, which is invoked in cases "involving questions of law of major importance to the administration of the district courts." *Arizona v. United States Dist. Court (In re Cement Antitrust Litig.)*, 688 F.2d 1297, 1303, 1307 (9th Cir. 1982) (showing of actual injury and ordinary error may suffice).

This court in *Christensen v. United States Dist. Court*, 844 F.2d 694, 696-99 (9th Cir. 1988) observed that an inability to be represented during trial by chosen counsel cannot be effectively reviewed on appeal from final judgment. This Court granted a petition for writ of mandamus where lawyer had been excluded from representing the defendant.

Failure to seek certification under 28 U.S.C. § 1292(b) does not preclude mandamus relief. *See Executive Software North Am., Inc. v. United States Dist Court*, 24 F.3d 1545, 1550 (9th Cir. 1994) (stating that permissive appeal under § 1292(b) is not a "contemporaneous ordinary appeal"), *overruled on other grounds by California Dep't of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

Mandamus relief may be appropriate to settle an important question of first impression that cannot be effectively reviewed after final judgment. *See Medhekar v. United States Dist. Court*, 99 F.3d 325, 327 (9th Cir. 1996) (per curiam) (noting that

where the fifth *Bauman* factor is present, the third and fourth factors generally will not be present).

Here, the factors are present calling for a writ of mandamus under Bauman:

1)      The Appeals Panel has ruled that a direct appeal is not available to the Petitioner and that the Ninth Circuit does not have jurisdiction to hear an appeal.

2)      Criminal prosecution has been formally requested of the U.S. Attorney for the District of Arizona by a sitting federal judge.  Denial of chosen counsel has already had effects on the Petitioner's legal rights and is having an impact on a daily basis.  The damage from not having legal advice and representation now cannot be undone later.

3)      The damage cannot be corrected on appeal, including because effective assistance of counsel is necessary to preserve issues for appeal and there are many other actions that may complete the record that would be reviewed on appeal.

The lack of an effective legal team functioning at every stage of criminal prosecution can directly impact whether issues can be appealed.

FRAP Rule 28-2.5 reminds us of the general rule that an appellate court will not hear an appeal of an error that was not properly objected to, perhaps with an appropriate proffer and/or documentation of asserted facts.

### [Contents of Brief]  28-2.5. Reviewability and Standard of Review

As to each issue, appellant shall state where in the record on

appeal the issue was raised and ruled on and identify the applicable standard of review.

In addition, if a ruling complained of on appeal is one to which a party must have objected at trial to preserve a right of review, e.g., a failure to admit or to exclude evidence or the giving of or refusal to give a jury instruction, the party shall state where in the record on appeal the objection and ruling are set forth.

Thus, denial of a defendant's chosen attorney in a criminal prosecution cannot be cured later. What issues are raised, how they are documented in the record, and how appeals are preserved can prevent appellate review under appellate rules.

4) The District Court's application of the law is clearly erroneous. A court may not deny *pro hac vice* admission simply by reciting that an attorney represents more than one client -- without analyzing whether any actual conflict exists. Nor may the Court engage in unfounded speculation that a conflict might arise.

5) The District Court clearly erred in the application of sound discretion for attorney *pro hac vice* admission applications and highlights the need for the Ninth Circuit to clarify the abuse of discretion law in this area. Furthermore, the issue is likely to arise repeatedly in the future such that this Court's guidance would be helpful for the administration of justice in the future.

6) The District Court's order raises important problems to the extent that the District Court by this judge and in previous Arizona cases believes that a trial court has no standards or obligations with regard to *pro hac vice* applications but may deny

such applications for any or no reason.

As this Court further explained in the same 2015 *United States v. U.S. Dist. Court for the Dist. of Arizona* case:

> However, that discretion is not unbounded. Local Rule IA 10-3 does not empower a district court to refuse pro hac vice admission arbitrarily. *See Zambrano v. City of Tustin*, 885 F.2d 1473, 1483 (9th Cir. 1989) ("Admission to a state bar creates a presumption of good moral character that cannot be overcome at the whims of the District Court." (quoting *In re Evans*, 524 F.2d 1004, 1007 (5th Cir. 1975) (internal quotations marks omitted))); *cf. Munoz*, 439 F.2d at 1179 (expressing confidence that the district judge "will not exercise his discretionary power arbitrarily" and therefore declining to "fix precise guidelines" governing pro hac vice admission under a district's local rules). Therefore, a district court must articulate a valid reason for its exercise of discretion. *See Roma Constr. Co. v. Russo*, 96 F.3d 566, 577 (1st Cir. 1996); *cf. United States v. Ries*, 100 F.3d 1469, 1472 (9th Cir. 1996) (holding, in a criminal case, that "[i]n denying a pro hac vice application, the judge must articulate his reasons, for the benefit of the defendant and the reviewing court").

*United States v. U.S. Dist. Court for the Dist. of Arizona* at pages 18-19.

**B. Mandamus is Appropriate Remedy for *Pro Hac Vice* Admission**

This Ninth Circuit previously approved of the use of a petition for writ of mandamus for the denial of admission of attorneys *pro hac vice* -- also from the same District Court in Arizona. However, the trial court in that case withdrew its objection to the *pro hac vice* admissions, and this Court found that mandamus was no longer in order due to the fact that the attorneys were in fact admitted *pro hac vice*.

> The United States has filed a petition for a writ of mandamus challenging a district judge's policy restricting the pro hac vice admission of government attorneys. After the petition was filed, the district judge reversed his previous order denying an attorney in this case pro hac vice

admission. The United States contends that the district judge's reversal of his previous order did not render this controversy moot, and requests that we exercise our supervisory and advisory mandamus power to issue guidance to the district court. We agree that the controversy remains live, conclude that the district court erred, and find that guidance to the district court is appropriate.

*United States v. U.S. Dist. Court for the Dist. of Arizona* (In re United States), Appeal No. 14-70486 (9th Cir., June 29, 2015).

### C. Petitioner has Right to Counsel, Even *Pro Hac Vice* as of Right

A criminal defendant's or potential criminal defendant's Sixth Amendment rights encompass the right to be represented by the attorney selected by the defendant. *Wheat v. United States*, 486 U.S. 153, 159, 100 L. Ed. 2d 140, 108 S. Ct. 1692 (1988); *Powell v. Alabama*, 287 U.S. 45, 53, 77 L. Ed. 158, 53 S. Ct. 55 (1932). "It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama,* 287 U.S. at 53.

In this case, the Petitioner has chosen to have a criminal defense team that includes a former federal prosecutor, Larry Klayman, whom he believes will be aligned with his needs and with his chosen strategy in his defense.  The Petitioner's choice is no less than a constitutional right which also implicates the validity of the criminal prosecution pursuant to the Sixth Amendment and due process provisions of the U.S. Constitution.  The denial to a criminal defendant of his chosen defense attorney is no mere trifle but is a constitutional right, as the Supreme Court has held.

As this Court has noted in the course of its analyses of related issues:

> Finally, that Cohan isn't a member of the Oregon bar was not an adequate reason to deny substitution. A defendant's right to the counsel of his choice includes the right to have an out-of-state lawyer admitted pro hac vice. *Collins*, 920 F.2d at 626.

*United States v. Lillie*, 989 F.2d 1054, 1056 (9th Cir. 1993) (citation omitted), overruled on other grounds by *United States v. Garrett*, 179 F.3d 1143 (9th Cir.1999).

*Garrett's* citation is to *United States v. Collins*, 920 F.2d 619, 626 (10th Cir.1990), cert. denied, 500 U.S. 920, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991), in which this Court further confirmed:

> Before reaching the merits of defendant's sixth amendment claim, we address the effect of Dickstein's pro hac vice admission. Although the admission of attorneys pro hac vice is committed to the discretion of the district courts, denial of admission pro hac vice in criminal cases ***implicates the constitutional right to counsel of choice***. *Panzardi-Alvarez v. United States*, 879 F.2d 975, 980 (1st Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990); *Fuller*, 868 F.2d at 607; *Panzardi Alvarez*, 816 F.2d at 816.

*Id.* at 626 (emphasis added).

This Court in *U.S. v. Lillie* also explained:

> A criminal defendant is entitled to the retained counsel of his choice (though not to the appointed counsel of his choice). U.S. Const. amend. VI; *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692 1697, 100 L.Ed.2d 140 (1988). This isn't an absolute right; it may be abridged to serve some compelling purpose. ***But the defendant can't be denied his choice of retained counsel just because the***

1
2
3
4
5

> ***request comes late, or the court thinks current counsel is doing an adequate job.*** See, e.g., *United States v. Torres-Rodriguez*, 930 F.2d 1375, 1380 n. 2 (9th Cir.1991); *United States v. Kelm*, 827 F.2d 1319, 1322 (9th Cir.1987); *United States v. Collins*, 920 F.2d 619, 626 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991).

6

*Id.* at 1055-1056 *(emphasis added)*. That is, the District Court cannot deny a

7

8

defendant's right to counsel without a compelling reason.

9

"[A] decision denying a pro hac vice admission necessarily implicates

10

constitutional concerns." *Panzardi-Alvarez v. United States*, 879 F.2d 975, 980 (1st

11

12

Cir.1989). The right to retain particular counsel of his own choosing stems from a

13

defendant's right to decide what kind of case he wishes to present in his defense. *U.S.*

14

*v. Nichols*, 841 F.2d 1485, 1502 (10th Cir.1988).

15

16

The Petitioner's right to defend himself under his constitutional right of due

17

process and right to an attorney unavoidably includes how he chooses to present a

18

19

legal defense, on what grounds, and emphasizing the concepts, issues, facts, and

20

approach he deems best so as to preserve his liberty interest against a possible

21

criminal conviction. Therefore, the choice of a defendant's attorney(s) is a

22

23

constitutionally-protected right, because the choice of the attorney(s) can have a

24

significant effect upon how the criminal defendant's defense is organized and

25

presented. Here, the Petitioner wishes to have a former federal prosecutor familiar

26

with this type of case. Accordingly, the District Court must enter the admission of

27

28

the Petitioner's chosen attorney.

Therefore, in the case at bar, the District Court may not lightly deny the Petitioner's attorneys' *pro hac vice* applications, arguably subject to constitutional strict scrutiny burdening the Petitioner's constitutional right to be defended against criminal charges by the attorneys of his choice.

A person's right to retain counsel of his choice therefore represents " 'a right of constitutional dimension'" *U.S. v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir.1982) (citing *U.S. v. Wisniewski*, 478 F.2d 274, 285 (2d Cir.1973)), the denial of which may rise to the level of a constitutional violation. *Birt v. Montgomery*, 725 F.2d 587, 592 (11th Cir.) (*en banc*), cert. denied, 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984); *Wilson v. Mintzes*, 761 F.2d 275, 278-79 (6th Cir. 1985).

In *United States v. Gonzalez-Lopez*, 399 F.3d 924, 932 (8th Cir. Mo. 2005), the Court vacated the conviction against the defendant because the trial court had improperly denied the *pro hac vice* application of defendants' counsel of choice by relying on improper evidence.

**D. District Court Erred Denying Admission of Montgomery's Attorney *Pro Hac Vice* on Speculation of Conflict of Interest**

This Petition turns on an important and clear question of law. The District Court erred primarily on an issue of law such that the Ninth Circuit's review is unrestricted by any finding of fact.

- 22 -

1    Simply reciting that Klayman and Moseley represent Sheriff Arpaio in an

2  entirely unrelated matter does not establish any conflict of interest.

3    Disqualification of an attorney under a conflict of attorney applies *only* "where

4

5  serious conflict exists." *See Dunton v. County of Suffolk*, 729 F.2d 903, 909 (2d

6  Cir.1984), *amended* 748 F.2d 69 (2d Cir.1984). *The proponent of disqualification*

7  *must demonstrate the existence* of a conflict of interest which is "serious." *Id.*

8

9    The relevant test for a conflict of interest of an attorney is whether the other

10  representation is "substantially related" to the current representation. *See Gas-A-*

11  *Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322, 1325 (9th Cir.), *cert.*

12

13  *denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). A substantial

14  relationship is found if the factual contexts of the two representations are similar or

15  related. *Trone v. Smith*, 621 F.2d 994 (C.A.9 (Cal.), 1980) *(emphasis added)*.

16

17        We held that the "relevant test for disqualification is
         whether the former representation is ***'substantially related'***
18       ***to the current representation.***" Id. at 998; see Gas-A-
         Tron of Arizona, supra, 534 F.2d at 1325; *Westinghouse*
19       *Electric Co. v. Gulf Oil Corp.*, 588 F.2d 221, 223 (CA7
         1978). "Substantiality is present ***if the factual contexts of***
20       ***the two representations are similar or related***." *Trone*,
         supra, 621 F.2d at 998.
21

22  *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85 (C.A.9 (Mont.), 1983)
23  *(Emphases added)*.

24    But, here, the "***the factual contexts of the two representations***" are not

25

26  ***"similar or related." Id.*** Representation of Montgomery in the current case shares no

27

28

- 23 -

operative facts nor factual circumstances in common with Arpaio's challenge to the constitutionality of Obama's executive order on amnesty for illegal aliens.

Moreover, the complete irrelevance of Montgomery to the lawsuit – even though he is being harmed in fact – destroys any claim of a conflict of interest. Montgomery seeks to defend himself against being improperly drawn into a case that should not involve him at all. Thus, the legal test of a conflict of interest that would disqualify Moseley or Klayman suffers greatly from the failure to establish any sound reason for Montgomery to be dragged in to the case below. Montgomery is not material to the case. Therefore, no significant conflict of interest exists.

Again, disqualification applies "where serious conflict exists." *Dunton v. County of Suffolk*, *supra.* There can be no serious conflict on matters which are completely immaterial in the case. Since nothing concerning Montgomery is material in *Melendres v. Arpaio*, nothing concerning Montgomery can be the basis of a "serious" conflict of interest in this case.

As a result, there is no conflict of interest between Klayman's or Moseley's representation of Montgomery *pro hac vice* in this case and their (now concluded) representation for Sheriff Joe Arpaio contesting the legal validity of President Barack Obama's executive grant of amnesty to illegal aliens.

Judge Snow denied Moseley's and Klayman's application to be admitted *pro hac vice* on unsupported speculation that there a conflict of interest might develop.

But the record does not contain any basis for disqualification. Moseley filed a

"Clarification of Motion for Admittance *Pro Hac Vice* of Jonathon A. Moseley,"

dated May 13, 2015, (Doc. # 1080), ER447, [1] stating that *(emphasis added):*

> Neither Dennis L. Montgomery nor his counsel are
> adverse to Sheriff Arpaio, his deputies, the Cold Case
> Posse, or MCSO **in any respect**, particularly since this
> case involves a contempt proceeding over allegations of
> profiling illegal immigrants.

There were no facts developed in the record in opposition to Moseley as

counsel for Montgomery validly establishing any conflict of interest under relevant

law, just as later there were no such facts developed concerning Klayman.

Failing to follow the law of this Circuit, Judge Snow merely suggested that

Sheriff Arpaio and MCSO staff – when compelled to do so by Judge Snow's

persistent questioning *sua sponte* – described dissatisfaction with the results produced

by some research conducted by Montgomery with his computer techniques. But

mere differences of opinion – particularly when the trial judge compels one person

against their will to speak ill of another – do not establish a conflict of interest within

attorney-client representation. The law addresses conflicting interests of a serious

and substantial nature, not differences of opinion.

---

[1]    *See, also,* Email from Larry Klayman to Amy Lake and Mike Zullo, April 29,
2015, Exhibit 2, to Plaintiffs' Opposition to Motion for Admission Pro Hac Vice of
Larry Klayman, July 28, 2015 (Doc. # 1198-2). ER251.

The proceedings below involve imprecise and highly careless questioning, for example failing the most basic requirements of identifying _which_ of several unrelated topics the questions were addressed to.  There is nothing in the record that establishes anything other than simple differences of opinion about what various people imagined that computer analysis of data might find.  Under this slipshod questioning there may have been nothing more than a different understanding between Montgomery and others about what he was working on.   Certainly at this present time, this does not establish the "serious" and "substantial" conflict of interest required by the jurisprudence of this Ninth Circuit for denying _pro hac vice_ status.

**E. District Court Must Analyze _Pro Hac Vice_ Application -- Not Apply Rule "Mechanistically"**

In _United States v. Walters,_ 309 F.3d 589, 592 (9th Cir. Cal. 2002), even though a _pro hac vice_ attorney there may have properly been denied due to the fact that he resided and had an office in California,[2] yet in a <u>criminal</u> context, the denial was improper because "the district court applied the local rule mechanistically, without discussion of whether the interest of the fair, efficient, and orderly administration of justice required denial of the application." _Id._

Here, the mistake was worse than in _United States v. Walters_, by "mechanistically" applying an erroneous standard that an attorney's application may

---

[2]     I.e., the attorney there was not actually out-of-state and should have pursued admission generally to the California bar.

be denied merely because the attorney represents more than one client in _unrelated_

matters and/or a conflict of interest could arise in the future. Thus, the District Court

abused its discretion by not granting Klayman's and/or Moseley's application for

admission _pro hac vice_.

**F. This Ninth Circuit Has Conceded that Pro Hac Vice
Standards in this Circuit Need to Clarified**

Only back in 2015, this Court stated that courts in the the Ninth Circuit have

been inadequate in applying consistent standards for a _pro hac vice_ attorney

admission application:

> We have offered little guidance about what constitutes a valid reason
> for denying pro hac vice admission in a civil case. Some of our sister
> circuits permit district courts to deny an application for pro hac vice
> admission only in rare circumstances. For instance, the Fifth Circuit has
> held that

> > [a]n applicant for admission pro hac vice who is a
> > member in good standing of a state bar may not be
> > denied the privilege to appear except "on a showing that
> > in any legal matter, whether before the particular district
> > court or in another jurisdiction, he has been guilty of
> > unethical conduct of such a nature as to justify
> > disbarment of a lawyer admitted generally to the bar of
> > the court."

_In re Evans_, 524 F.2d at 1007 (quoting _Sanders v. Russell_, 401 F.2d 241, 247-48 (5th
Cir. 1968)). The Eleventh Circuit has continued to apply this stringent standard
following its split from the Fifth Circuit. See _Schlumburger Techs., Inc. v. Wiley_, 113
F.3d 1553, 1561 (11th Cir. 1997) ("Absent a showing of unethical conduct rising to a
level that would justify disbarment, the court must admit the attorney.").

> In other circuits, district courts have broader discretion to refuse
> pro hac vice admission. For instance, the Sixth Circuit has held that an

attorney's pro hac vice admission may be revoked where conflicts of interest exist, or where "some evidence of ethical violations was present." *D.H. Overmeyer Co., Inc. v. Robson*, 750 F.2d 31, 34 (6th Cir. 1984). And the Fourth Circuit has held that a district court may deny an attorney permission to appear pro hac vice based on the attorney's "unlawyer-like conduct in connection with the case in which he wished to appear." *Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir. 1957) (per curiam).

We need not announce specific factors that should inform a district court's exercise of its discretion to deny pro hac vice admission. To resolve this case, we need only define the outer limits of that discretion. At minimum, a court's decision to deny pro hac vice admission must be based on criteria reasonably related to promoting the orderly administration of justice, see *Ries*, 100 F.3d at 1471, or some other legitimate policy of the courts, see *Roma Constr. Co.*, 96 F.3d at 577 (concluding that a district court abused its discretion where its decision to deny pro hac vice admission was "based on criteria that are not set forth in writing, that do not reasonably support its action, and that do not appear to respond to any general policy of the District . . . .").

We recognize that "counsel from other jurisdictions may be significantly more difficult to reach or discipline than local counsel." *Ries*, 100 F.3d at 1471. However, "[a]dmission to the state bar is the essential determinant of professional ethics and legal competence," and, in practice, "the application process for admission before the federal district courts is generally perfunctory and pro forma." *Zambrano*, 885 F.2d at 1483. Therefore, if a court has ethical doubts about an attorney who is in good standing with a state bar, it must articulate some reasonable basis for those doubts before denying the attorney's application for pro hac vice admission.

We conclude that the district court's decision to deny pro hac vice admission to Lowe was arbitrary, and therefore lay outside the district court's discretion.

*United States v. U.S. Dist. Court for the Dist. of Arizona* (In re United States), Appeal No. 14-70486 (9th Cir., June 29, 2015), page 19 - 21.

- 28 -

**G. Petitioner's Intervention as of Right or by Permissive Intervention Should be Ordered**

The Ninth Circuit should order that Montgomery's motion to intervene be granted, either as of right or by permissive intervention. Oral argument before the Appeals Panel on September 14, 2016, already included discussion and argument about Montgomery's intervention in the case. Again, the transcript has been ordered and will be filed by supplement when received.

Federal Rules of Civil Procedure ("FRCP") Rule 24 governs intervention by additional parties in existing litigation in the federal courts:

Rule 24. Intervention

(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:
* * *
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) PERMISSIVE INTERVENTION.
(1) *In General.* On timely motion, the court may permit anyone to intervene who:
* * *
(B) has a claim or defense that shares with the main action a common question of law or fact.

The Plaintiffs-Appellants below stated the law governing intervention as of right:

1
2
3
4
5
6
7
8
9
10

> An applicant for intervention as a matter of right must satisfy four requirements, namely that: "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *S. Cal. Edison Co.*, 307 F.3d at 802 (citing *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)); Fed. R. Civ. P. 24(a)(2). The applicant has the burden of showing that all of the requirements are met; failure to satisfy any requirement is fatal. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009); *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006).

11
12

Answering Brief of Plaintiffs-Appellants, Ninth Circuit, Consolidated Appeals No. 15-16440 and 15-16626, January 20, 2016, page 32, attached as Exhibit E.

13
14

Pursuant to FRCP 24(a)(2), Montgomery has a right to intervene "as of right."

15
16

*First*, Montgomery has a personal stake in this matter and "a significant

17
18

protectable interest relating to the property or transaction that is the subject of the

action " in which his property has been seized by verbal order on April 23, 2015, and

19

by Judge Snow's written Order, April 27, 2015, Document # 1033, ER127.

20
21

As the Petitioner pled in his motion to intervene in the District Court on May 7,

22

2015, below:

23
24
25
26

> Mr. Montgomery's physical personal property and intellectual property has been affected and taken. Montgomery's proprietary interests have been invaded along with his attorney work product subject to privilege and other privileged material, documents, and/or information.  Montgomery was deprived of the right to

27
28

> review the documents to protect privileged information
> and/or documents and proprietary information.

Intervenor Dennis L. Montgomery's Memorandum of Law in Support of Motion for Intervention of Right, May 7, 2015, Document # 1057, page 3, Exhibit F.

As the Petitioner also stated in the case below on May 13, 2015:

> The data, information, and intellectual property was
> provided under limited license to the Maricopa County
> Sheriff's Office for limited purposes, not provided to the
> Court.

Intervenor Dennis L. Montgomery's Notice of Supplemental Authority and Supplemental Memorandum of Law In Support of Motion For Intervention of Right, May 13, 2015, Document # 1081, page 2, attached as Exhibit G.

However, the Plaintiffs below and the District Court failed to understand -- while muzzling the Petitioner from being able to explain -- that the Petitioner's property was provided to MCSO only temporarily, under agreement, for limited purposes. The records, documents, and computer disks served were never at any time the property of MCSO but at all times remained the property of the Petitioner Montgomery. These were not records of MCSO, but property of the Petitioner.

Federal courts in this Circuit have already decided – with appeal rights expired – that the items are Montgomery's property. See *Nevada Orders*, *supra*. The U.S. Government admits that they do not know if they own any of the documents, items, or things seized from MCSO. The DoJ attorney, Raphael Gomez, admitted in open Court on July 20, 2015:

> The United States **does not know whether there are any documents in the Montgomery files** that are in fact classified or sensitive, but **there is a representation** that there were documents that were of the United States.

Transcript, July 20, 2015, Status Conference, *Melendres v. Arpaio,* Page 43 *(Emphases added) (argument by Raphel Gomez for the DoJ).* ER862.

> MR. GOMEZ: Yes, Your Honor. I believe on May 8th **the Court had issued an order to the defendants' counsel instructing the defendants' counsel to contact the United States; actually, the CIA general counsel's office**. At that point, we -- I'm an attorney in the Civil Division of the Department of Justice in Washington, D.C., and we were contacted, and pursuant to that instruction we had spoken to defendants' counsel, and with the purpose of, **since there had been a representation made that documents contained in what I'll refer to as the Montgomery documents** were either documents of the United States or documents that -- implied – were classified or sensitive.

Transcript, July 20, 2015, Status Conference, *Melendres v. Arpaio,* Page 42 *(Emphases added).* ER861.

Judge Snow ordered Montgomery's items to be handed over to the DoJ on the off-chance and mere possibility that they might include government documents. **This is the same "callous disregard" for his rights** that the Honorable Phillip Pro and Magistrate Valerie Cooke condemned in the *Nevada Orders*, *supra*.

*Second*, clearly the actions in the case below in the District Court "may, as a practical matter, impair or impede the applicant's ability to protect [his] interest." The various actions that have occurred and also those likely to be undertaken threaten to reveal confidential and/or privileged information, violate the Petitioner's privilege

rights, deprive the Petitioner of the commercial value of his intellectual property, violate the terms of the Petitioner's agreement for the limited use of his property by MCSO, and deprive the Petitioner of access to some or all of his property.

*Third,* Montgomery's motion is timely. The case started to involve Montgomery only on April 23, 2015. Montgomery immediately filed his motion within two weeks on May 7, 2015. See, Exhibit E, attached. Montgomery complied with FRCP Rule 24(c) with notice and a proposed pleading filed with the motion.

*Fourth,* the existing parties cannot adequately protect the Petitioner's interests. The Plaintiffs below are actively hostile and have sought to incite criminal prosecution of Montgomery. The Defendants below are concerned with defending against a criminal referral to the U.S. Attorney from a sitting federal judge. They have their hands full and face difficult challenges of their own.

With regard to permissive intervention, the Plaintiffs-Appellees also stated the law that:

> "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *City of Los Angeles*, 288 F.3d at 403 (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)).

The District Court has permitted 19 "interested parties" to participate in the case, who are not formal parties. See, Docket History, Excerpt of the Record in

Appeals No. 15-16440 and 15-16626, Volume 4.  Having allowed 19 non-parties to participate, intervention by Montgomery should obviously have been granted.

Moreover, the District Court made it clear that it opposed the motion *independently* of admitting Montgomery's attorneys *pro hac vice*:  "**even if I admit him pro hac vice, we still have to then deal with his motion to intervene, which strikes me, as I said, to be a little bit problematic, anyway**."  *See,* Transcript, May 14, 2015, 34:15-20. ER727 (emphasis added).  Thus, the issue remains live.

## VIII.  <u>CONCLUSION AND REQUEST FOR RELIEF</u>

Under the approach used in the District Court below, the criminal referral against Dennis Montgomery will already be resolved long before the Dennis Montgomery's rights can be protected by his chosen attorney or attorneys.   The Court should issue a writ of mandamus for the District Court to admit attorney Larry Klayman and Jonathon Moseley *pro hac vice* as counsel for Dennis L. Montgomery and order that his intervention in the case below be granted. He needs to protect his property rights and to defend himself against findings of alleged criminal conduct and a criminal referral by the lower court. Petitioner's due process rights are implicated and given that this matter is already before this distinguished panel, with oral argument, a quick decision is respectfully requested. This is important to allow Petitioner to defend his interests and is in the interest of fundamental fairness and justice.

1

Dated: October 4, 2016                    Respectfully submitted,

2

_____ /s/ Larry Klayman, Esq. _____.

3

Larry Klayman, Esq.
Washington, D.C. Bar No. 334581

4

2020 Pennsylvania Avenue N.W.

5

Suite 800
Washington, D.C. 20006

6

(310) 595-0800

7

leklayman@gmail.com
Attorney for Petitioner

8

## CERTIFICATE OF SERVICE

9

10

     I hereby certify that on October 4, 2016, I electronically filed the foregoing
Petition for Writ of Mandamus document with the Clerk of the Court by using the

11

CM/ECF system, which will send a notice of electronic filing to opposing counsel

12

registered on CM/ECF.

13

Courtesy Copy per as directed by

14

Federal Rules of Appellate Procedure
Rule 21(a)(1) to:

15

16

The Honorable G. Murray Snow
U.S. District Court for the District of

17

Arizona

18

Sandra Day O'Connor U.S. Courthouse
401 W. Washington St., Suite 130, SPC

19

1 Phoenix, AZ  85003-2118

20

21

Stanley Young, Esq.
Andrew Carl Byrnes, Esq.

22

333 Twin Dolphin Road
Redwood Shores, CA 94065

23

syoung@cov.com

24

650-632-4700

25

Attorneys for Plaintiffs
(Service via Email)

26

27

28

Daniel Pochoda, Esq.
ACLU FOUNDATION OF ARIZONA
3707 N. 7th Street, Suite 235
Phoenix, AZ 85014
dpochoda@acluaz.org
602-650-1854
Attorney for Plaintiffs
(Service via Email)

Cecilia D. Wang
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
cwang@aclu.org
415-343-0775
Attorney for Plaintiff Melendres
(Service via Email)

Thomas P. Liddy, Esq.
CIVIL SERVICES DIVISION
MARICOPA COUNTY ATTORNEY'S OFFICE
222 North Central Avenue, Suite 1100
Phoenix, AZ 85005
liddyt@mcao.maricopa.gov
602-506-8541
Attorney for Defendant Joseph Arpaio and Maricopa County
Sheriff's Office
(Service via Email)

Michele M. Iafrate, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, AZ 85003
miafrate@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County
Sheriff's Office
(Service via Email)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Deborah L.  Garner, Esq.
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, AZ 85003
dgarner@iafratelaw.com
602-234-9775
Attorney for Defendant Joseph Arpaio and Maricopa County
Sheriff's Office
(Service via Email)

Melvin McDonald
JONES SKELTON & HOCHULI, PLC
2901 N.  Central Avenue, Suite 800
Phoenix, AZ 85012-2728
mmcdonald@jshfirm.com
602-263-1700
Attorney for Defendant Sheriff Joseph Arpaio
(Service via Email)

Andre Segura, Esq.
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Fl.
New York, NY 10004
asegura@aclu.org
212-549-2676
Attorney for Plaintiffs
(Service via Email)

Anne Lai
UCI School of Law
401 E.  Peltason Drive.  Suite 3500
Irvine, CA 92616
alai@law.uci.edu
949-824-9894
(Service via Email)

Jorge M.  Castillo
MALDEF
634 S. Spring Street, 11th Fl.

Los Angeles, CA 90014
jcastillo@maldef.org
213-629-2512
Attorney for Plaintiffs
(Service via Email)

Richard K.  Walker
WALKER & PESKIND, PLLC
16100 N.  71st Street, Suite 140
Scottsdale, AZ 85254-2236
rkw@azlawpartner.com
480-483-6336
Attorney for Defendant Maricopa County
(Service via Email)


_____/s/ Larry Klayman, Esq._____.
Larry Klayman, Esq.