No. 16-73233

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### In re DENNIS L. MONTGOMERY,

*Petitioner,*

v.

### UNITED STATES DISTRICT COURT FOR
### THE DISTRICT OF ARIZONA,

*Respondent Court,*

and

### MANUEL DE JESUS ORTEGA MELENDRES, ET AL.,

*Plaintiffs and Real Parties in Interest.*

---

**ON PETITION FOR WRIT OF MANDAMUS FROM A DECISION OF
THE DISTRICT COURT FOR THE DISTRICT OF ARIZONA
2:07-cv-02513-GMS
The Honorable G. Murray Snow
United States District Judge**

---

**ANSWER OF PLAINTIFFS-REAL PARTIES IN INTEREST
TO PETITION FOR MANDAMUS FOR ADMISSION OF PETITIONER'S
ATTORNEY PRO HAC VICE**

---

**Stanley Young**
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood shores, CA 94065-1418
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
syoung@cov.com
mmorin@cov.com

**Cecillia D. Wang**
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950
cwang@aclu.org

*Attorneys for Plaintiffs-Real Parties in Interest*
*MANUEL DE JESUS ORTEGA MELENDRES, ET AL.*

**Dan Pochoda**
ACLU FOUNDATION OF ARIZONA
3707 N. 7th St., Ste. 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376
dpochoda@acluaz.org
jlyall@acluaz.org

**Anne Lai**
401 E. Peltason Dr.
Law 4800-P
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-0066
alai@law.uci.edu

**Andre Segura**
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654
asegura@aclu.org

**Julia Gomez**
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL
FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
jcastillo@maldef.org

*Attorneys for Plaintiffs-Appellees*

*MANUEL DE JESUS ORTEGA MELENDRES, ET AL.*

# TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ........................................................................................ 1

STATEMENT OF THE CASE................................................................... 2

     1.    The Underlying Case............................................................. 2

     2.    Testimony and Documents Regarding MCSO's Investigation........... 2

     3.    Montgomery's Motions to Intervene and to Disqualify the District Court............................................................. 4

     4.    Montgomery's Prior Requests For This Court's Intervention ............. 6

     5.    The Contempt Proceeding and Resulting Criminal Prosecution ......... 7

     6.    Montgomery's Attempted Appeal and Additional Facts Arising During the Same................................................................. 8

ARGUMENT .......................................................................................... 10

I.    The Requirements For Mandamus Relief Are Stringent And Not Satisfied Here........................................................................ 10

II.   The Court Properly Acted Within Its Discretion In Denying The *Pro Hac Vice* Applications. ............................................................ 12

     A.    As a Non-Party to a Civil Case, Montgomery Had No Absolute Right To Counsel At All, And Certainly No Right To Any Particular Out-of-State Counsel. ........................................ 12

     B.    Klayman's And Moseley's Conflict Of Interest Justified The Denial Of Their *Pro Hac Vice* Applications. ...................................... 13

     C.    Klayman's Status As A Potential Witness Justified Denial Of His Pro Hac Vice Motion. ................................................. 17

     D.    The Failures Of Candor Of Klayman And Moseley Justified The Denials Of Their Pro Hac Vice Motions..................................... 18

i

E.     The New Factual Allegations Made In This Court On Montgomery's Behalf Should Be Made, If At All, In A Renewed *Pro Hac Vice* Application In The District Court. .............. 21

III.   This Court Should Not Issue A Writ Of Mandamus To Compel Montgomery's Intervention. ............................................................ 23

A.     No Need For Mandamus Relief Exists To Address Montgomery's Intervention Motion. .................................................. 23

B.     In Any Case, Montgomery's Intervention Motion Fails on the Merits. .............................................................................................. 24

1.     Montgomery Is Not Entitled to Intervention as of Right ......... 24

2.     Montgomery's Permissive Intervention Is Not Warranted ...... 27

CONCLUSION ........................................................................................ 28

CERTIFICATE OF COMPLIANCE ....................................................... 31

CERTIFICATE OF SERVICE ................................................................ 32

## TABLE OF AUTHORITIES

CASES                                                          Page(s)

*Allied Chemical Corp. v. Daiflon, Inc.*,
  449 U.S. 33 (1980) ................................................................10

*Baldwin Hardware Corp. v. FrankSu Enter. Corp.*,
  78 F.3d 550 (Fed. Cir. 1996) ...............................................19

*Bauman v. United States Dist. Ct.*,
  557 F.2d 650 (9th Cir. 1977) ...............................................10

*Brown v. Marshall*,
  704 F.2d 333 (6th Cir. 1983) ...............................................22

*In re Bundy*,
  No. 16-72275, 2016 WL 6311104 (9th Cir. Oct. 28, 2016) ..............1, 13, 19, 21

*Cheney v. United States Dist. Ct. for D.C.*,
  542 U.S. 367 (2004)..............................................................10

*Clemens v. U.S. Dist. Ct. for the Central Dist. of California*,
  428 F.3d 1175 (9th Cir. 2005) .............................................10

*In re Cnty. of Los Angeles*,
  223 F.3d 990 (9th Cir. 2000) ...............................................14

*Cole v. U.S. Dist. Ct. for the Dist. of Idaho*,
  366 F.3d 813 (9th Cir. 2004) ...............................................15

*In re Coordinated Pretrial Proceedings, etc.*,
  658 F.2d 1355 (9th Cir. 1981) .............................................18

*DeGeorge v. U.S. District Court*,
  219 F.3d 930 (9th Cir. 2000) ...............................................10

*In re Dennis L. Montgomery*,
  No. 15-71443, Dkt. 1, 2 (9th Cir. May 12, 2015)...............................7

*Donnelly v. Glickman*,
 159 F.3d 405 (9th Cir. 1998) ..................................................................25, 27

*Flatt v. Superior Ct.*,
 36 Cal.Rptr.2d 537 (1994) ......................................................................16, 17

*Gallo v. U.S. Dist. Court For Dist. of Arizona*,
 349 F.3d 1169 (9th Cir. 2003) ........................................................................12

*Gas-A-Tron of Ariz. v. Union Oil Co. of Cal.*,
 534 F.2d 1322 (9th Cir.) ............................................................................12, 16

*Hedges v. Resolution Trust Corp.*,
 32 F.3d 1360 (9th Cir. 1994) ..........................................................................12

*Hollingsworth v. Perry*,
 558 U.S. 183 (2010)..........................................................................................15

*Image Technical Service, Inc. v. Eastman Kodak Co.*,
 136 F.3d 1354 (9th Cir. 1998) ........................................................................16

*Ivey v. Board of Regents*,
 673 F.2d 266 (9th Cir. 1982) ..........................................................................12

*MacDraw, Inc. v. CIT Group Equip. Financing, Inc.*,
 138 F.3d 33 (2d Cir. 1998) ..............................................................................19

*Melendres v. Arpaio*,
 695 F.3d 990 (9th Cir. 2012) (*Melendres I* ) ........................................................2

*Melendres v. Arpaio*,
 784 F.3d 1254 (9th Cir. 2015) (*Melendres II*)......................................................2

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*,
 534 Fed. Appx. 665 (9th Cir. 2013)................................................................28

*Moseley v. Va. State Bar, ex rel. Seventh Dist. Comm.*,
 694 S.E.2d 586 (Va. 2010) ..............................................................................20

*Northwest Forest Res. Council v. Glickman*,
 82 F.3d 825 (9th Cir. 1996) ............................................................................27

*Perry v. Proposition 8 Official Proponents*,
   587 F.3d 947 (9th Cir. 2009) ........................................................25, 28

*Prete v. Bradbury*,
   438 F.3d 949 (9th Cir. 2006) ...................................................................25

*Prof'l Programs Grp. v. Dept. of Commerce*,
   29 F.3d 1349 (9th Cir. 1994) .................................................................15

*Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. & Power Dist.*,
   810 F. Supp. 2d 929 (D. Ariz. 2011) ...............................................16, 17

*S. Cal. Edison Co. v. Lynch*,
   307 F.3d 794 (9th Cir.), *modified*, 307 F.3d 943 (9th Cir. 2002),
   *and certified question answered sub nom. S. California Edison Co.
   v. Peevey*, 31 Cal. 4th 781, 74 P.3d 795 (2003).................................24, 27

*Simmons v. Navajo Cnty.*,
   609 F.3d 1011 (9th Cir. 2010) ...............................................................13

*Trone v. Smith*,
   621 F.2d 994 (9th Cir. 1980) ...........................................................12, 18

*Trust Corp. of Mont. v. Piper Aircraft Corp.*,
   701 F.2d 85 (9th Cir. 1983) ..............................................................12, 18

*Unified Sewerage Agency of Washington Cty., Or. v. Jelco Inc.*,
   646 F.2d 1339 (9th Cir. 1981) ...............................................................23

*In re United States*,
   791 F.3d 945 (9th Cir. 2015) .................................................................12

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ............................................................24, 27

*United States v. Ensign*,
   491 F.3d 1109 (9th Cir. 2007) ...........................................................12, 19

*United States v. Ries*,
   100 F.3d 1469 (9th Cir. 1996) ...............................................................18

*United States v. Sardone*,
   94 F.3d 1233 (9th Cir. 1996) .................................................................12

v

**STATUTES**

28 U.S.C. § 1746 ...................................................................................22

**OTHER AUTHORITIES**

Sixth Amendment ............................................................................13, 21

Fourteenth Amendment ...........................................................................2

Arizona Rules of Professional Conduct ................................................14

Ariz. E.R. 1.7(a) .....................................................................................14

Cal. Prof. Conduct Rule 3-310(C)(3) .....................................................16

D. Ariz. L.R. Civ. 83.1(b)(2) ...........................................................12, 14

D. Ariz L.R. Civ. 83.2(e) ........................................................................14

United States Court of Appeals for the Ninth Circuit, 15-16440
    *Manuel Ortega Melendres v. Dennis Montgomery*, YOUTUBE
    (Sept. 14, 2016),
    https://www.youtube.com/watch?v=auaCCqxWuX8 .......................22

Fed. R. App. P. 21(d) ..............................................................................31

Fed. R. Civ. P. 24(a)(2) ..........................................................................25

Fed. R. Civ. P. 24(b)(3) ..........................................................................28

## INTRODUCTION

Petitioner Dennis Montgomery ("Montgomery") seeks a writ of mandamus to compel the *pro hac vice* admissions of Larry Klayman and Jonathan Moseley of Freedom Watch, Inc. and to intervene in the case below. The District Court's decisions to deny the *pro hac vice* motions were correct, given Klayman's and Moseley's conflicts of interest and the potential that Klayman would be a witness in the case. The District Court also based its decisions on Klayman's and Moseley's omissions and misstatements in their *pro hac vice* applications. (As to Klayman, a similar set of reasons very recently led this Court to deny a mandamus petition challenging another district court's denial of *pro hac vice* admission. *In re Bundy*, No. 16-72275, 2016 WL 6311104 (9th Cir. Oct. 28, 2016).)

To the extent that Montgomery now claims that changed circumstances warrant different decisions, his attorneys should renew their *pro hac vice* motions in the District Court so as to allow the District Court to assess, among other things, the attorneys' current conflict situation, whether Montgomery really wants and needs Klayman and Moseley to be his attorneys, and whether intervention is warranted in the present state of proceedings in the District Court. Montgomery was involved in the litigation below only in that he was the subject of testimony; he has no stake in and has suffered no harm during the lawsuit below. The facts here come nowhere close to justifying the extraordinary mandamus relief sought.

## STATEMENT OF THE CASE

### 1. The Underlying Case

The present mandamus petition ("Petition" or "Pet.") arises out of a civil rights case, now in the remedial phase, in which this Court previously affirmed the District Court's findings of Fourth and Fourteenth Amendment violations and substantially upheld the resulting injunctive remedy against Joe Arpaio, the Sheriff of Maricopa County. *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) (*Melendres II*). In April and September-November 2015, the District Court held a civil contempt evidentiary hearing on Sheriff Arpaio's admitted violation of a preliminary injunction that this Court had previously affirmed in *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) (*Melendres I* ), and on other grounds of civil contempt against Sheriff Arpaio and other individual commanders in his office.

Montgomery was not a party in the case, was not charged with, and has not been found in, contempt, and was never ordered to do anything by the District Court.

### 2. Testimony and Documents Regarding MCSO's Investigation

During the contempt hearing, the District Court received evidence on Sheriff Arpaio's admitted failures to comply with the District Court's orders and on a pattern of resistance to the Court's orders, which is relevant to the issue of appropriate remedies for the contempt. Ex. 20 (citing Ex. 3). This evidence included testimony and documents on work done by Montgomery as a paid

confidential informant for MCSO. Sheriff Arpaio and Chief Deputy Sheridan testified in response to the District Court's questions about a press article alleging that Montgomery was helping MCSO investigate the district judge presiding over this case below. Ex. 32; Ex. 30; Ex.27. Sheriff Arpaio and others confirmed that MCSO was conducting an investigation, through Montgomery, and that Montgomery was paid as MCSO's confidential informant for his services and information. Ex. 20 (citing Ex. 30; Ex. 27).

The District Court ordered MCSO to produce to the Court's Monitor and to Plaintiffs, subject to a protective order, any documents and information in the possession of MCSO or its employees relating to the Montgomery investigation, Ex. 22. The MCSO disclosed the materials, which showed that MCSO, through the civilian head of MCSO's "Cold Case Posse," Michael Zullo, and Montgomery had (1) investigated Montgomery's allegations that the district judge, the Attorney General of the United States, and others were conspiring against Sheriff Arpaio and (2) looked into an alleged invasion of the district judge's banking information. Montgomery represented to MCSO that, in these investigations, he was using telephone and email communications that the Central Intelligence Agency had illegally intercepted and that Montgomery in turn had stolen from the CIA while he was a contract employee there. Ex. 21; Ex. 24; Ex. 32; Ex. 33; Ex. 35. In April 2015, Sheriff Arpaio testified that he and MCSO eventually concluded that

3

Montgomery's information, which included 50 hard drives of data that Montgomery had purportedly stolen from the CIA, was "junk" and that there was no evidence to support Montgomery's allegations. Ex. 15; Ex. 27.

### 3. Montgomery's Motions to Intervene and to Disqualify the District Court

Shortly after Sheriff Arpaio testified that Montgomery's allegations were "junk," Montgomery, through his counsel Moseley and Klayman, filed a motion to intervene in the District Court proceedings, as well as a motion to disqualify the District Court from further involvement with the case. Ex. 26. Montgomery demanded that the information that he had given to MCSO and that was the subject of testimony in the hearing be returned to him, that statements about him be stricken from the record of the contempt hearing, and that the litigation be stayed and the District Court disqualified. Ex. 26. Because Moseley and Klayman were not members of the State Bar of Arizona; they sought to be admitted *pro hac vice*. *See*, *e.g.*, Ex. 5; Ex. 6; Ex. 9. Plaintiffs opposed the motions. Ex. 7; Ex. 14.

The District Court denied both *pro hac vice* applications in order to ensure that the proceedings were "conducted within the standards of the profession." *See* Ex. 4; Ex. 5; Ex. 28; Ex. 11; *see also* Ex. 14.

First, the District Court found that allowing Moseley and Klayman (and their firm, Freedom Watch) to represent Montgomery would create an impermissible conflict of interest with respect to those attorneys' then ongoing representation of

4

Sheriff Arpaio in other actions relating to immigration enforcement. Ex. 4; *see also* Ex. 38; Ex. 37; Ex. 36. Sheriff Arpaio, who had testified that the information that Montgomery had provided was "junk," told his attorney Klayman that Klayman's representation of Zullo and Montgomery "create[s] a conflict here in Arizona." Ex. 14. The District Court accordingly concluded that there would be a conflict of interest if Klayman and Moseley simultaneously represented both Sheriff Arpaio and Montgomery. *See* Ex. 4.

The District Court also noted that Klayman might be called as a witness in the case, because the documents produced in the litigation included nonprivileged correspondence between Klayman and Sheriff Arpaio and other MCSO employees about the work that Montgomery was doing for the MCSO. Ex. 15; Ex. 34; Ex. 8; Ex. 14. Although evidence in the contempt proceedings later closed without Klayman testifying, at the time that the District Court denied the motions for *pro hac vice* admission it was possible that Klayman could have been called to testify as a witness regarding these events and correspondence. Ex. 11.

The District Court further found that both Klayman and Moseley had made misstatements (detailed below) in connection with their *pro hac vice* motions and were not candid with the District Court about prior disciplinary histories that would have been highly relevant to the consideration of those applications. In addition, Klayman had made "unwarranted attacks on . . . the sheriff's counsel"

5

and others, which the District Court found "suggest[ed] that he would infuse invective" into the suit and improperly inject unrelated and extraneous issues into an already-protracted litigation. Ex. 11.[1]

On these grounds, the District Court denied Klayman's and Moseley's *pro hac vice* motions. It then struck the intervention and disqualification motions that those unauthorized attorneys had filed. Ex. 4; Ex. 5; Ex. 28; Ex. 11 (orders). The District Court never made any decision on the merits of the intervention motion, although Klayman did tell the District Court that Klayman was unable to describe what Montgomery's property interest was in the data at issue, given that the Nevada court decisions that Klayman was citing predated the creation of that data. *See, e.g.*, Ex. 5; Ex. 7; Ex. 28; Ex. 12. Montgomery filed a motion for reconsideration of the *pro hac vice* denials; and that motion was denied. Ex. 4.

### 4. Montgomery's Prior Requests For This Court's Intervention

On May 11, 2015, Montgomery filed a petition for a writ of mandamus, asking this Court to compel the District Court's recusal, and further demanding that the District Court's orders be vacated and that Montgomery's alleged property

---

[1] For instance, in an August 10, 2015 reply filed in support of Klayman's *pro hac vice* application, Klayman stated that an email from Sheriff Arpaio's assistant "was probably dictated by Michele Iafrate [Sheriff Arpaio's counsel], who frankly has not represented the Sheriff zealously and within the bounds of the law." Ex. 31.

be returned to him. This Court summarily denied that petition. *In re Dennis L. Montgomery*, No. 15-71443, Dkt. 1, 2 (9th Cir. May 12, 2015).

On May 22, 2015, Sheriff Arpaio and Chief Deputy Sheridan filed their own motion to recuse the district judge. Ex. 25. After the District Court denied that motion, Sheriff Arpaio and Chief Deputy Sheridan filed their own petition for a writ of mandamus, asking this Court to order the district judge's recusal. No. 15-72440, Dkt. 2; *see also* Dkt. 11 (opposition). Montgomery, through Klayman and Moseley, moved to intervene in that mandamus proceeding. No. 15-72440, Dkt. 4; *see also* Dkt. 9 (opposition). Arpaio's and Sheridan's petition was denied, and Montgomery's pending motion was denied as moot. No. 15-72440, Dkt. 14, 15.

### 5. The Contempt Proceeding and Resulting Criminal Prosecution

The contempt proceeding concluded with findings of contempt entered on May 13, 2016 against Sheriff Arpaio and others, and an August 19, 2016 Order re Criminal Contempt which recommended criminal prosecution of the Sheriff and others and stated that any such prosecution would be referred to a different judge. Pet. Ex. B. Montgomery, while discussed in the contempt orders, was neither found in civil contempt nor recommended for criminal prosecution. A criminal prosecution has commenced as to Sheriff Arpaio, with a trial set for December 6, 2016. The criminal order to show cause against Arpaio does not mention Montgomery. Ex. 17.

**6. Montgomery's Attempted Appeal and Additional Facts Arising During the Same**

Meanwhile, Montgomery, through Klayman and Moseley, filed an appeal of the District Court's orders. During the pendency of that appeal, Montgomery also filed a separate emergency motion in this Court to stay the District Court proceedings pending his appeal (No. 15-16440, Dkt. 5), relying on Arpaio's and Sheridan's disqualification mandamus petition. This Court denied Montgomery's motion to stay. No. 15-16440, Dkt. 11.

At the September 14, 2016 oral argument on Montgomery's previous appeal, Klayman informed this Court of the conclusion of his and Moseley's representation of Sheriff Arpaio that had created the conflict cited by the District Court in denying the *pro hac vice* motions.[2]

This Court, after oral argument, dismissed Montgomery's appeal for lack of jurisdiction, but noted that Montgomery could file a mandamus petition seeking the same relief. Pet. Ex. A. This Court noted that the District Court never ruled on Montgomery's motion to intervene, since Klayman's and Moseley's papers had

---

[2] The instant Petition, at 6–7, also prominently notes this "Change of Circumstances."

been stricken, and Montgomery did not appeal the grounds for striking of the motions and any appeal of such striking would have been time barred. *Id.* at 4.[3]

During the course of the appeal, Klayman submitted a Supplemental Declaration of Appellant Dennis M. Montgomery stating facts supporting Klayman's *pro hac vice* motion (e.g., that Montgomery was "unable to hire an attorney" and had "only a limited ability to communicate but . . . slowly recovered to some extent"). Pet. Ex. D. This declaration had never been submitted to the District Court. The declaration does not bear a date, and nothing in it indicates when it was signed.

On July 19, 2016, counsel for Plaintiffs received two emails purporting to be from Montgomery, and stating that Klayman no longer represented Montgomery. Ex. 1 (see Ex. A thereto). Counsel for Plaintiff asked Klayman about these emails. *Id.* Klayman did not deny the genuineness of the emails, but, after further inquiry shortly before the oral argument, on September 8, 2016 stated that he still represented Montgomery. Ex. 1 (see Ex. B and Ex. C thereto).

---

[3] This Court also stated that Montgomery lacked standing to appeal the denial of other litigants' motion to disqualify the District Court judge. Montgomery in the present petition does not again seek a writ compelling the judge's recusal.

9

## ARGUMENT

### I.    The Requirements For Mandamus Relief Are Stringent And Not Satisfied Here.

A writ of mandamus is an extraordinary remedy, warranted only in extraordinary circumstances. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *Cheney v. United States Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). Before a writ may issue, the party seeking it must show that it has no other adequate means to obtain the relief it desires, that its right to issuance of the writ is "clear and indisputable," and that the writ is appropriate under the circumstances. *Id.* at 381 (internal quotation omitted). Petitioner must also show clear error as a matter of law in the district court's orders. *Clemens v. U.S. Dist. Ct. for the Central Dist. of California*, 428 F.3d 1175, 1178, 1180 (9th Cir. 2005); *see also Bauman v. United States Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977) (listing factors for consideration).

As shown below, Montgomery cannot make the required showing pursuant to the five *Bauman* factors. The District Court's orders, in view of the facts as they existed at the times of their issuance, are not clearly erroneous as a matter of law (factor 3), a factor that "will always defeat a petition for mandamus . . . ." *DeGeorge v. U.S. District Court*, 219 F.3d 930, 934 (9th Cir. 2000). To the extent that Klayman and Moseley rely on changed circumstances to support their *pro hac vice* motions, they may present those changed circumstances to the District Court

10

in renewed *pro hac vice* motions in order to give the District Court the chance to evaluate those new facts; this is an "adequate," and indeed preferable, means to attain the desired relief (factor 1). Additionally, there will be no harm to Montgomery in the absence of mandamus (factor 2), since the District Court's civil contempt proceeding has concluded and there is no alleged ongoing need for Montgomery to participate in the case below. If there ever is a criminal proceeding involving Montgomery, it will be in a different case and Klayman and Moseley may seek to appear to defend Montgomery there. There is no claim of oft-repeated error (factor 4) or an important or first impression issue (factor 5).

This case does not involve any impending criminal trial or other event in which Montgomery may suffer prejudice if not allowed to have his counsel of choice. Montgomery's (and Klayman's) own choice not to file a mandamus petition until after dismissal of his appeal shows the lack of urgency. The District Court denied the *pro hac vice* motions more than a year ago.  In the meantime, the civil contempt hearing that was then in process has now concluded (with non-party Montgomery not having suffered any consequence other than having been the subject of testimony by MSCO witnesses). There would be no need for mandamus relief, even if the District Court had decided wrongly. As shown below, the District Court in fact decided rightly.

**II.    The Court Properly Acted Within Its Discretion In Denying The *Pro Hac Vice* Applications.**

Whether to grant a *pro hac vice* application lies within "the discretion of the Court." D. Ariz. L.R. Civ. 83.1(b)(2); *United States v. Ensign*, 491 F.3d 1109, 1113 (9th Cir. 2007); *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980); *Gallo v. U.S. Dist. Court For Dist. of Arizona*, 349 F.3d 1169, 1185 (9th Cir. 2003). "An order disqualifying or refusing to disqualify counsel will not be disturbed if the record reveals any sound basis for the district court's action." *Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) (citing *Gas-A-Tron of Ariz. v. Union Oil Co. of Cal.*, 534 F.2d 1322, 1325 (9th Cir.)).

**A.    As a Non-Party to a Civil Case, Montgomery Had No Absolute Right To Counsel At All, And Certainly No Right To Any Particular Out-of-State Counsel.**

Montgomery, who is not even a party to this lawsuit, has no absolute right to seek intervention through any counsel, let alone *pro hac vice* counsel, in this civil case. There is no general constitutional right to counsel for a party in a civil suit. *United States v. Sardone*, 94 F.3d 1233, 1236 (9th Cir. 1996) (holding that there is generally "no constitutional right to counsel in civil cases"); *Hedges v. Resolution Trust Corp.*, 32 F.3d 1360, 1363 (9th Cir. 1994) ("there is no absolute right to counsel in civil proceedings") (citing *Ivey v. Board of Regents*, 673 F.2d 266, 269 (9th Cir. 1982)); *see also In re United States*, 791 F.3d 945, 956–58 (9th Cir. 2015)

12

(discussing district courts' discretion to deny *pro hac vice* admissions in civil cases).

Montgomery's reliance on precedents in criminal cases, Pet. at 19–22, is therefore misplaced. This case lacks both the substantive Sixth Amendment right and the temporal exigency present in *Bundy*, where "a little over three months [later, the 70 year old petitioner was] . . . scheduled to go to trial on sixteen serious federal charges" that could lead him to "spend the rest of his life in prison." *In re Bundy*, No. 16-72275, 2016 WL 6311104, at *15 (9th Cir. Oct. 28, 2016) (Gould, J., dissenting). Montgomery in this case is not a party and faces nothing even remotely similar to the situation Bundy faced as a criminal defendant. If there ever is a criminal prosecution of Montgomery, then of course he can assert his Sixth Amendment right in that case. The present case is not that case.

### B. Klayman's And Moseley's Conflict Of Interest Justified The Denial Of Their *Pro Hac Vice* Applications.

Applying its local rules, the District Court properly denied the applications of Klayman and Moseley because their representation of Montgomery in this case would have created a conflict of interest with their existing client, Sheriff Arpaio, whom Klayman and Moseley represented in another lawsuit over federal immigration policy. Ex. 4; Ex. 11; *see supra* at 10-13. *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1017 (9th Cir. 2010) ("District courts have broad discretion in interpreting and applying their local rules.") (quotation omitted). The District

Court explained at length its bases for finding a conflict under the Arizona Rules of Professional Conduct. Ex. 4; *see also* Ex. 22; Ex. 16. Among other things, under the Arizona rules, a lawyer may not represent a client if the representation involves a concurrent conflict of interest, such as where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . ." Ariz. E.R. 1.7(a) (Arizona rule governing conflicts of interest as to current clients) (". . . a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.")*; see also* D. Ariz. L.R. Civ. 83.1(b)(2) ("Attorneys admitted to practice pro hac vice must comply with the Rules of Practice of the United States District Court for the District of Arizona"); D. Ariz. L.R. Civ. 83.2(e) ("The 'Rules of Professional Conduct,' in the Rules of the Supreme Court of the State of Arizona, shall apply to attorneys admitted or otherwise authorized to practice before the United States District Court for the District of Arizona."); *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) (federal courts "apply state law in determining matters of disqualification"). The applicable ethics rules are binding

on the parties and the Court, and have the force of law. *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (local rules have "the force of law"); *Prof'l Programs Grp. v. Dept. of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994) (local rules "are binding upon the parties and upon the court"); *Cole v. U.S. Dist. Ct. for the Dist. of Idaho*, 366 F.3d 813, 822 (9th Cir. 2004) (ethics rules apply to attorneys admitted *pro hac vice* just as they do to other counsel).

Sheriff Arpaio's testimony denigrating Montgomery, on the one hand, and Montgomery's apparent desire to protect his reputation, on the other, would have created a clear conflict for any attorney attempting to represent them both. For Klayman and Moseley to have sought to bolster Montgomery's credibility would have brought them into direct opposition to Sheriff's Arpaio's testimony that Montgomery's allegations were "junk." Emails between Klayman and the Sheriff's subordinates clearly show their bitterly conflicting positions over the veracity of Montgomery's information. Ex. 15 (Klayman telling MSCO personnel, "I don't appreciate your games. . . . your games are just to squeeze Dennis [Montgomery] through me. I don't appreciate being played. . . . these tactics are offensive at this time in particular."). The Petition attempts to dismiss this conflict as "mere differences of opinion," Pet. at 25, but where the issue was whether Sheriff Arpaio had contemptuously defied the Court's orders, and the fact in dispute between the Sheriff and Montgomery was whether the district judge was a party to a conspiracy

against the Sheriff, such "differences of opinion" were not trivial. Sheriff Arpaio directly told Klayman that Klayman's representation of Montgomery in the case below would have created a conflict. Ex. 14 (at RE 1231).

Montgomery cites *Gas-A-Tron of Arizona* for the proposition that the relevant test for disqualification is whether the attorney's other representation is "substantially related" to the current representation. Pet. at 23 (citing *Gas-A-Tron of Ariz.*, 534 F.2d at 1325). Montgomery misapprehends the lawyer ethical rules. A conflict arises when an attorney is adverse in one matter to a party who is a *current* client in another matter, regardless of whether the two matters are substantially related. *See, e.g.,* Ariz. E.R. 1.7(a); Cal. Prof. Conduct Rule 3-310(C)(3); *Image Technical Service, Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1358 (9th Cir. 1998) ("Simultaneous representation of clients with conflicting interests (and without written informed consent) is an automatic ethics violation in California and grounds for disqualification.") (citing *Flatt v. Superior Ct.*, 36 Cal.Rptr.2d 537, 542–43 (1994)); *Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. & Power Dist.*, 810 F. Supp. 2d 929, 950, 976 (D. Ariz. 2011) (distinguishing between Arizona E.R. 1.7, which generally prohibits concurrent conflicts absent informed consent, and E.R. 1.9, which applies the "substantially related" standard to successive conflicts). It is only when the other matter is a *former* representation that a "substantial relationship" between the two matters becomes the requisite for a

16

disqualifying conflict. *See, e.g.*, *Flatt v. Superior Court*, 36 Cal.Rptr.2d at 542;

*Roosevelt Irr. Dist. V. Salt River Project Agr. Imp. & Power Dist.*, 810 F. Supp. 2d

at 950, 976. Here, it is undisputed that, at the time of the *pro hac vice* motions,

Klayman and Montgomery were seeking simultaneously to represent Montgomery

in the case below and Sheriff Arpaio in a separate immigration lawsuit. Given their

conflict, and absent waivers, such concurrent representation was not permissible.

The District Court was therefore correct in denying the *pro hac vice* motions

based on the conflict between Montgomery and the Sheriff. To the extent the

situation has changed, Klayman and Moseley should make their motions again in

the District Court.[4]

### C. Klayman's Status As A Potential Witness Justified Denial Of His Pro Hac Vice Motion.

When the District Court decided the *pro hac vice* motions, it was possible

that Klayman might be required to testify as a witness in the contempt proceedings,

as he had had direct communication with both Sheriff Arpaio and other witnesses

regarding Montgomery's investigations. Ex. 15; Ex. 14; Ex. 11. Klayman's

appearance as an attorney while also being a witness would have been a violation

of Arizona's local ethics rules, *see* Ariz. E.R. 3.7, and further supported the District

Court's refusal to admit Klayman *pro hac vice*. The Petition completely ignores

---

[4] *See* Section II.E., *infra* at 21–22.

this independent and sufficient basis for the denial of Klayman's *pro hac vice* application.

### D. The Failures Of Candor Of Klayman And Moseley Justified The Denials Of Their Pro Hac Vice Motions.

Klayman's and Moseley's conduct in this litigation, which included unnecessary attacks on Plaintiff's and Arpaio's counsel and the District Court, *see* Ex. 31, as well as their failure to be fully candid with the District Court about their conduct in this and other cases, *supra* at 10–15, provided ample additional bases for the District Court's decision that denying their *pro hac vice* motions was necessary to preserve the efficient and orderly administration of justice. *See United States v. Ries*, 100 F.3d 1469, 1471 (9th Cir. 1996) (where "an of out-of-state attorney strongly suggests through his behavior that he will neither abide by the court's rules and practices—thus impeding the 'orderly administration of Justice'—nor be readily answerable to the court," denial of *pro hac vice* status is appropriate) (quotation omitted).

The primary responsibility for controlling the conduct of attorneys practicing before the District Court rests with that Court. *Trust Corp. of Mont.*, 701 F.2d at 87 (citing *In re Coordinated Pretrial Proceedings, etc.*, 658 F.2d 1355, 1358 (9th Cir. 1981); *Trone*, 621 F.2d at 999). The District Court's exercise of discretion to prevent violations of the Arizona ethics rules was well within its discretion. Accordingly, this Court should find the orders within the District Court's proper

exercise of discretion. *See, e.g.*, *Ensign*, 491 F.3d at 1114 (right to counsel "could be revoked to serve a compelling purpose, such as the efficient and orderly administration of justice") (quotations and citation omitted).

Klayman, while mentioning other matters in his *pro hac vice* application in response to questions about discipline in other courts, failed to disclose to the District Court two decisions by U.S. Courts of Appeals explaining in detail how Klayman had been found to have abused his *pro hac vice* admissions in other cases. *See Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550 (Fed. Cir. 1996); *MacDraw, Inc. v. CIT Group Equip. Financing, Inc.*, 138 F.3d 33 (2d Cir. 1998). The Second Circuit found that Klayman's challenge to a judge's impartiality based on the judge's ethnicity and the identity of the administration that appointed him was "insulting and smacked of intimidation." *MacDraw*, 138 F.3d at 38. The Federal Circuit affirmed a sanction against Klayman's firm for "unreasonably and vexatiously multiplying the proceedings." *Baldwin Hardware*, 78 F.3d at 554. The District Court noted these omissions in denying Klayman's application. Ex. 11.[5]

---

[5] *Bundy* discloses even more instances of misbehavior and failure to disclose such misbehavior. However, evidence of those was not before the District Court. They would be relevant to any future *pro hac vice* motion to be filed by Klayman in the District Court.

Moseley also was not candid with the District Court in his application for admission *pro hac vice*. He failed to disclose that a Virginia Supreme Court decision regarding his earlier six-month suspension from practice in that Court revealed that Moseley's client had given a copy of a key document to Moseley, who then failed to disclose it and, instead of dropping the improperly-filed case, proceeded to conduct the proceeding without any basis, filed in excess of 80 pleadings and motions, used abusive discovery tactics, and engaged in unprofessional behaviors intended to intimidate and harass the adverse party. Ex. 7 (discussing *Moseley v. Va. State Bar, ex rel. Seventh Dist. Comm.*, 694 S.E.2d 586 (Va. 2010)).

Moreover, Moseley represented to the District Court that his *pro hac vice* application, accompanied by a two-page letter dated May 2, 2015 and a three-page document entitled "Additional Information," were copied to all counsel, when that was not in fact the case. *See* Ex. 6; Ex. 23. Moseley also at first represented to the Court that his purpose in intervening was not "to actually participate in the conduct of this case, but merely to sponsor the filing of an Amicus Curiae brief for Sheriff Joe Arpaio by attorney Larry Klayman of Freedom Watch," Ex. 6; *see also* Ex. 23; Ex. 10, but then submitted a "clarification" of his motion for admittance, claiming instead that the statement about an amicus brief was inadvertently included and should be ignored, Ex. 9 at 466–67, and even withdrew his prior letter to the Court.

Ex. 9. The District Court relied on all these defects and omissions in Moseley's application in denying it. Ex. 4.

Misrepresentations and omissions of this nature justify the denial of *pro hac vice* admission, especially given the absence here of the weighty Sixth Amendment right to counsel of choice that would exist in a criminal case. *Bundy*, 2016 WL 6311104, at *13 ("Klayman has made misrepresentations and omissions to the district court . . . he has shown a pattern of disregard for local rules, ethics, and decorum . . . . By any standard, the district court properly denied his petition to be admitted *pro hac vice*. Bundy is entitled to a fair trial, defended by competent, vigorous counsel of his choosing. But his right to such counsel does not extend to counsel from outside the district who has made it a pattern or practice of impeding the ethical and orderly administration of justice); *id.* at *18 ("I do not dismiss lightly the district court's ethical concerns regarding Klayman, especially the issue of candor. The district court had good grounds to be worried about Klayman appearing before it.") (Gould, J., dissenting).

### E. The New Factual Allegations Made In This Court On Montgomery's Behalf Should Be Made, If At All, In A Renewed *Pro Hac Vice* Application In The District Court.

The termination of Klayman's and Moseley's representation of Sheriff Arpaio, and the declaration of Montgomery purporting to explain his need for

Klayman's representation, are factual matters that were not before the District Court and should not be the basis for a writ of mandamus in this Court.

Moreover, the Montgomery declaration, which lacks a date among other things, does not satisfy the requirements of 28 U.S.C. § 1746. The date of the Montgomery declaration may be important because of two emails, dated July 19, 2016, appearing to be from Montgomery to Plaintiffs' counsel, stating that Klayman no longer represents Montgomery. Ex. 1 (see Ex. A thereto).These emails are relevant, at least, to the issue of whether Montgomery is, as claimed, truly unable to obtain counsel other than Klayman.

This Court should not wade into these new factual issues. If there are new facts that Montgomery wishes to argue would justify renewed *pro hac vice* motions, then those should be presented to the District Court in the first instance, for the District Court to weigh in light of other facts and the current status of the case below, as noted by a member of the panel on Montgomery's recently dismissed appeal. United States Court of Appeal for the Ninth Circuit, *15-16440 Manuel Ortega Melendres v. Dennis Montgomery*, YOUTUBE (Sept. 14, 2016), https://www.youtube.com/watch?v=auaCCqxWuX8. Because "the court of appeals is not equipped to receive evidence or function as a fact-finder," *Brown v. Marshall*, 704 F.2d 333, 334 (6th Cir. 1983), and nothing prevents the presentation

of any alleged new facts to the District Court, a writ of mandamus here would be unwarranted.

## III. This Court Should Not Issue A Writ Of Mandamus To Compel Montgomery's Intervention.

### A. No Need For Mandamus Relief Exists To Address Montgomery's Intervention Motion.

The District Court did not rule on Montgomery's May 7, 2015 motion to intervene. Ex. 7, Ex. 28 (declining to rule on motion to intervene, because Montgomery could "hire any other attorney that doesn't present the conflict" shared by Klayman and Moseley). The contempt hearing that was then in process has now concluded, the District Court has made its rulings, and Montgomery is not the subject of any potential further action in the case below. Therefore, there is no urgent reason for any intervention motion to be resolved at this moment. *See, e.g.*, *Unified Sewerage Agency of Washington Cty., Or. v. Jelco Inc.*, 646 F.2d 1339, 1344 (9th Cir. 1981) (issuing a writ of mandamus where "irremediable damage" to the petitioner was imminent). If Klayman and Moseley submit renewed *pro hac vice* motions based on any changed circumstances, and those motions are granted, Klayman and Moseley could again present the intervention motion for the District Court to consider. Even if they are not admitted *pro hac vice*, Montgomery could contact the District Court *pro se* to ask it to consider his property interests in the 50 hard drives now in the possession of the U.S. Marshal, just as he appears to have

23

written to Plaintiffs's attorneys to tell them that Klayman no longer represented him. If warranted, the District Court could consider the appointment of an admitted attorney to represent Montgomery in asserting his alleged property interest. Even apart from the merits, therefore, the *Bauman* factors militate against mandamus relief.

## B. In Any Case, Montgomery's Intervention Motion Fails on the Merits.

This Court should not consider the merits of Montgomery's intervention motion. But, if this Court were to consider them, Montgomery's motion would fail because he did not meet the requirements to intervene in the District Court proceedings, either as of right or permissively.

### 1. Montgomery Is Not Entitled to Intervention as of Right.

An applicant for intervention as a matter of right must satisfy four requirements, namely that: "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 802 (9th Cir.), *modified*, 307 F.3d 943 (9th Cir. 2002), *and certified question answered sub nom. S. California Edison Co. v. Peevey*, 31 Cal. 4th 781, 74 P.3d 795 (2003) (citing *United States v. City of Los Angeles*, 288 F.3d 391, 397

24

(9th Cir. 2002)); Fed. R. Civ. P. 24(a)(2). The applicant has the burden of showing that all of the requirements are met; failure to satisfy any requirement is fatal. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009); *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006).

Montgomery cannot meet that burden in this case, because he did not demonstrate that he has a significant protectable interest in the contempt proceedings. "An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). The relationship requirement is met "if the resolution of the plaintiff's claims actually will affect the applicant." *Id.* at 410.

No property in Montgomery's possession has been ordered seized or confiscated, and all the information or documents in MCSO's possession that Montgomery provided to MCSO were discoverable and were produced subject to protective orders. Ex. 18 (ordering procedures subject to "strict 'claw back' principles" for privileged material); Ex. 19 (ordering materials to be held "in a secure location"); Ex. 7 (ordering parties not to disclose the Montgomery documents "in any way" or "to anybody else"); Ex. 24 (prohibiting the U.S. Government reviewers from disseminating the materials to any third party); *see*

25

*also* Ex. 29; Ex. 11. Moreover, the documents that Montgomery gave to MCSO were part of an investigation that MCSO commissioned and paid for. They were in MCSO's possession for months. Montgomery has not claimed that MCSO has any obligation to give them back, and, if he did so claim, this mandamus proceeding would not be the right forum for him to enforce that obligation.

Montgomery asserts that he seeks to protect "property rights" previously confirmed by a Nevada District Court. Pet at 3–4. That claim is meritless. At a July 20, 2015 status conference before the District Court, Klayman was unable to define any property interest of Montgomery in the information being disclosed, other than by arguing that a Nevada court had held that Montgomery possessed certain property interests in documents at issue in the Nevada litigation. Ex. 12; *see also* Pet. at 8–10 (discussing Nevada case). But, as the District Court pointed out, the Nevada orders were issued in 2006 or 2007, before Montgomery allegedly took the purported CIA data at issue in *this* case in 2009-2010 and provided it to MCSO in 2014. Ex. 12. Klayman, whom the District Court offered a chance to speak on the property right issue notwithstanding the denial of his *pro hac vice* motion, gave no basis for concluding that Montgomery had any property interest in the data at issue in *this* case. Ex. 12 ("I don't have that information, Your Honor. I don't have it."). In short, Montgomery has demonstrated no relationship between his theoretical property rights and the data that the MCSO turned over under the District Court's

orders. *Donnelly*, 159 F.3d at 410 ("An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant.").

Montgomery was not ordered to do or refrain from doing anything by the District Court. The testimony regarding Montgomery and his investigation into the District Court Judge has already occurred, and documents about him, or provided to MCSO by him, are already in the public record. The District Court's orders resolving the contempt proceeding, while mentioning Montgomery, do not affect his rights and do not recommend his prosecution. For all these reasons, there is no need for this Court to issue a writ of mandamus ordering that he be allowed to intervene.

### 2.     Montgomery's Permissive Intervention Is Not Warranted.

"[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *City of Los Angeles*, 288 F.3d at 403 (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *S. Cal. Edison Co.*, 307 F.3d at 803 (quoting *Donnelly*, 159 F.3d at 412).

The District Court here would have been well within its discretion to deny permissive intervention, had it reached the merits of that issue. For example, in exercising its discretion, a district court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, 534 Fed. Appx. 665, 667 (9th Cir. 2013) (citing Fed. R. Civ. P. 24(b)(3); *Perry*, 587 F.3d at 955). Montgomery's intervention would have created collateral litigation over his rights vis-à-vis MCSO and Sheriff Arpaio and their possession, and disclosure, of the information that he had provided to them. Montgomery's concerns are completely unrelated to the claims and defenses in the main action, which would further have supported denial of his motion to intervene. For all these reasons, permissive intervention, if it is assumed to have been denied on the merits, was properly denied.

## CONCLUSION

This is at least the fourth time that Klayman and Moseley, on behalf of Montgomery, have attempted to obtain this Court's aid in inserting themselves into the lawsuit below, following (1) the May 2015 mandamus petition, Case No. 15-71433, seeking the District Court's disqualification, (2) the August 2015 motion to intervene in Sheriff Arpaio's mandamus petition seeking the same relief, Case No. 15-72440, and (3) the earlier appeals in Case Nos. 15-16440 and 15-16626. To the

extent that this latest effort cites allegedly new circumstances justifying a

reexamination of what the District Court did earlier, those alleged new facts can be

raised with the District Court in the first instance so that the District Court can

consider them in light of the current status of the case below. The Petition should

be denied.

Dated: November 8, 2016                      By /s/ *Stanley Young*
                                             Stanley Young
                                             syoung@cov.com
                                             COVINGTON & BURLING LLP
                                             333 Twin Dolphin Drive, Suite 700
                                             Redwood Shores, CA 94065-1418
                                             Telephone: (650) 632-4700
                                             Facsimile: (650) 632-4800

                                             Dan Pochoda
                                             dpochoda@acluaz.org
                                             ACLU FOUNDATION OF
                                             ARIZONA
                                             3707 N. 7th St., Ste. 235
                                             Phoenix, AZ 85014
                                             Telephone: (602) 650-1854
                                             Facsimile: (602) 650-1376

                                             Anne Lai
                                             alai@law.uci.edu
                                             401 E. Peltason, Suite 3500
                                             Irvine, CA 92697-8000
                                             Telephone: (949) 824-9894
                                             Facsimile: (949) 824-0066

                                             Cecillia D. Wang
                                             cwang@aclu.org
                                             ACLU FOUNDATION
                                             Immigrants' Rights Project

29

39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

Andre Segura
asegura@aclu.org
ACLU FOUNDATION
Immigrants' Rights Project
125 Broad Street, 17th Floor
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654

Jorge Martin Castillo
jcastillo@maldef.org
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL
FUND
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone:  (213) 629-2512
Facsimile:  (213) 629-0266

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that this Response to Petition for Mandamus complies with Fed. R.

App. P. 21(d) and does not exceed 30 pages.


Date: November 8, 2016                    */s/ Stanley Young*
                                          STANLEY YOUNG

31

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: November 8, 2016              */s/ Stanley Young*_____
                                   STANLEY YOUNG